IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID MOHNEY, et al.,<br><br>      **Plaintiffs,**<br><br>  -against-<br><br>SHELLY'S PRIME STEAK, STONE CRAB & OYSTER BAR a/k/a SHELLY'S NEW YORK a/k/a SHELLY'S NEW YORK STEAKHOUSE AND OYSTER BAR, et al.,<br><br>      **Defendants.** | 06 Civ. 4270 (PAC) |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, APPROVAL OF THE FLSA SETTLEMENT, AND FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

I, Justin M. Swartz, declare as follows:

  1.  I am a partner in the firm of Outten & Golden LLP ("O&G"). On December 15, 2008, the Court appointed O&G as Class Counsel.

  2.  I have been one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims on behalf of the proposed class against Defendants. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently to such facts.

**Thorough Investigation and Litigation of the Class Claims**

  3.  We filed the Class Action Complaint on June 6, 2006.

  4.  The case was assigned to this Court because it was related to another case filed six months earlier, *Arroyo v. Redeye Grill, LP,* 06 Civ. 0381 (PAC) ("*Arroyo*").

  5.  Over the course of the litigation, we amended the Class Action Complaint three times:

    a. On July 14, 2006, we filed a First Amended Class Action Complaint adding Christopher Ruskis as a Named Plaintiff and adding Kimberly Clapso, Scott Debus, Roy Forlong, and Elvis Nunez as individual Retaliation Plaintiffs.

    b. On September 18, 2006, we filed a Second Amended Class Action Complaint adding Jeffrey Baskin as a Named Plaintiff and Abdur Khan, Jose Luis Roque Tavarez, John Bernard, and Chantal Georges as Retaliation Plaintiffs.

    c. On June 4, 2007, we filed a Third Amended Class Action Complaint adding Sekou Luke, Mohamammed Mahbubur Rahman, Joglul Islam, Greg Bibens, Helena Liljeblad, and William Spaugh as Named Plaintiffs, adding Sekou Luke and Michael Buoni as Retaliation Plaintiffs, and adding Red Eye Grill, Inc., Red Eye Grill, L.P. d/b/a Red Eye Grill, 45th Street Hospitality Partners d/b/a Bond 45 Italian Kitchen a/k/a Bond 45 Italian Kitchen Steak & Seafood, Brooklyn Diner USA, Inc., and Brooklyn Diner U.S.A., L.P., d/b/a Brooklyn Diner U.S.A. as Defendants. A true and correct copy of the Third Amended Class Action Complaint is attached hereto as **Exhibit A.**

 6. In addition to the Named Plaintiffs, 169 individuals have joined this case as "opt-in" plaintiffs under the Fair Labor Standards Act ("FLSA").

**History of Discovery and Litigation[1]**

 7. Before and during the formal litigation of this action, I, along with a team of attorneys and paralegals at O&G, conducted a thorough investigation into the merits of the potential claims and defenses. We focused our investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.

---

[1] Class Counsel will submit an additional declaration containing a more detailed recitation of their work in this case in connection with their motion for approval of their attorneys' fees.

8. We interviewed more than 46 servers, bussers, runners, and bartenders from all six restaurants to determine the hours that they worked, the wages they were paid, the duties of individuals who received tips, and other information relevant to their claims. From these interviews, we obtained supportive declarations from 25 servers, 5 bussers, 2 runners, and 1 bartender.

9. On September 26, 2006, we filed a Motion for An Order to Show Cause, Temporary Restraining Order, and Preliminary Injunction enjoining Defendants from retaliating against Plaintiffs for asserting their rights under the FLSA and the New York Labor Law "NYLL") and participating in this action. The Court scheduled an evidentiary hearing on Plaintiffs' motion for September 29, 2006 and, as the hearing was about to begin, the parties settled the dispute.

10. The Court issued a Consent Order on October 2, 2006, enjoining Defendants from further retaliation, appointing a special master, and tolling the FLSA statute of limitations. A true and correct copy of the Consent Order is attached as **Exhibit B.**

11. The parties took several depositions. Defendants took the depositions of Sekou Luke, a Named Plaintiff and server at Café Fiorello's, Robert Smith, a server at Trattoria, and Luis Ballester, a former server at Shelley's.

12. We took two depositions pursuant to Fed. R. Civ. P. 30(b)(6). On December 12, 2006, we deposed Kevin Robinson, The Fireman Group's Chief Operating Officer, regarding Defendants' policies and practices concerning tipping, the job duties of tipped employees, uniforms, compensation, overtime calculations, deductions from wages, posting and notice requirements, work schedules, and other issues.

13. On December 3, 2007, we deposed David Little, The Fireman Group's Director of Information Technology, regarding Defendants' policies and practices concerning the creation, retention, and preservation of payroll, time, and tip data.

14. We also obtained, reviewed, and analyzed thousands of pages of hard-copy documents and electronically-stored data including, but not limited to, employee handbooks, time and payroll records, human resources data, financial records, sales data, and employee lists. We further obtained and reviewed nine transcripts of depositions taken in *Arroyo*, the transcripts from a temporary restraining order hearing in *Arroyo*, and other documentary evidence produced in *Arroyo*.

15. Defendants served discovery requests on Plaintiffs, and in response Plaintiffs produced documents including employee earning statements, server tip out vouchers, and server close out reports.

**Settlement Negotiations**

16. In late 2005, we agreed to attempt to resolve this matter along with the *Arroyo* case through non-binding private mediation with Carol A. Wittenberg of JAMS. In preparation for the mediation, the parties exchanged targeted discovery aimed at allowing the parties to perform damages calculations.

17. We attended the first mediation session on January 8, 2007. After a full day of negotiating without a resolution, the parties agreed to continue settlement discussions informally.

18. Shortly thereafter, Defendants hired new counsel, Shea Stokes ALC, and the parties agreed to attend a second day of mediation on April 9, 2007. After another full day of negotiating, the parties were still unable to reach a resolution. The Court returned the case to the litigation track.

19. On June 5, 2007, we filed Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Plaintiffs' 216(b) Motion), which was fully briefed on August 7, 2007 and set for argument on December 6, 2007.

20. On July 23 and 24, 2007, after Plaintiffs' 216(b) Motion was fully briefed but before it was argued, the parties engaged in two more mediation sessions with Ms. Wittenberg. After two more full days of negotiating without a resolution, the parties agreed to resume discovery in August 2007.

21. On November 15, 2007, Plaintiffs sought permission to file a Motion for Class Certification pursuant to Fed. R. Civ. P. 23.

22. On December 3 and 4, 2007, the parties again attended mediation sessions before Mediator Wittenberg. After their sixth mediation session, on December 4, 2007, the parties reached a settlement and executed a Memorandum of Understanding ("MOU"). A true and correct copy of the MOU is attached hereto as **Exhibit C.**

23. Throughout the long course of settlement discussions, Defendants repeatedly claimed that they were in financial straights, especially most recently in the wake of the current financial crisis.

24. We have performed an asset search on some of the Individual Defendants and found that it is unlikely these Individual Defendants have sufficient assets to pay a greater judgment than the $3,265,000.

**Final Resolution of the Terms of the Settlement Agreement**

25. In February 2008, after attempting to resolve the open points outlined in the MOU, the parties sought the Court's assistance.

26. On March 13, 2008, the Court held a settlement conference. At the end of the settlement conference, the Court directed the parties to attend another mediation session with Ms. Wittenberg, which was held on April 25, 2008.

27. By the end of May 2008, open issues still remained.

28. The Court held another settlement conference on July 14, 2008 and again directed the parties to engage Ms. Wittenberg, which the parties did on July 23 and 24, 2008.

29. On August 7, 2008, the Court held another settlement conference.

30. On September 12, 2008, as a result of the Court's tireless assistance, Ms. Wittenberg's skillful mediating, and the parties' persistent negotiating, the parties signed a stipulation resolving all open issues and ending the settlement process. A true and correct copy of the Stipulation is attached hereto as **Exhibit D.** The Stipulation incorporated almost all of the terms of the last version of the settlement agreement that Plaintiffs had proposed to Defendants, except three items that were resolved by Stipulation itself and several other items that the parties would submit to Ms. Wittenberg for a binding resolution.

31. The Court "so ordered" the Stipulation on September 12, 2008. On September 19, 2008, the Court issued a correct stipulation. A true and correct copy of the "so ordered" Stipulation dated September 12, 2008 and the corrected Stipulation dated September 19, 2008 are attached hereto as **Exhibit E.**

32. After reviewing written submissions and hearing oral arguments during separate meetings with counsel, on September 29, 2008, Ms. Wittenberg resolved the four issues. A true

and correct copy of the Wittenberg Ruling is attached hereto as **Exhibit F.**

33.     On October 7, 2008, Defendants asked Ms. Wittenberg to reconsider her ruling. A true and correct copy of the letter from Arch Stokes to Ms. Wittenberg dated October 7, 2008 is attached hereto as **Exhibit G.**

34.     On October 13, 2008, Ms. Wittenberg clarified her ruling, directing Defendants to immediately make all currently due payments into an account held by the settlement administrator or Class Counsel's escrow account and to immediately provide the personal security interest. A true and correct copy of the Wittenberg Clarifying Ruling is attached hereto as **Exhibit H.**

35.     In October 2008, all 12 Named Plaintiffs signed the Joint Stipulation of Settlement and Release ("Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit I.**

36.     Defendants refused to sign the Settlement Agreement and did not begin funding the settlement. Instead, they engaged in further delay tactics by, among other things, raising purported concerns regarding the distribution of the settlement to Class Members – an issue that the parties had resolved as of the signing of the Stipulation on September 12, 2008.

37.     On October 20, 2008, Defendants requested a court conference to resolve their supposed concerns about the distribution of the settlement and the process for making overdue payments – an issue that had been decided in the Wittenberg Clarifying Ruling. Defendants also insisted that the Court conduct a hearing before the hearing on the motion for preliminary approval to decide these issues that had already been decided.

**Plaintiffs' Motion for Preliminary Approval**

38.     On November 5, 2008, the Court held a conference during which it granted us permission to file Plaintiffs' Motion for Preliminary Approval of Settlement. Attached as **Exhibit J** is a true and correct copy of a transcript from the conference before Judge Crotty on November 5, 2008.

39.     On November 21, 2008, Plaintiffs filed their Motion for Preliminary Approval of Settlement in which they requested, among other things, that the Court grant preliminary approval of the Settlement Agreement, provisionally certify the proposed settlement class, appoint O&G as Class Counsel, approve the Notice, order that Defendants make all settlement payments, and find Defendants in contempt and sanction them for failing to make past due settlement payments.

40.     On December 2, 2008, Defendants filed a response to Plaintiffs' Motion for Preliminary Approval in which they argued that the proposed settlement distribution method did not adequately protect absent Class Members, that Defendants were not in contempt, that the payment schedule should be modified due to Defendants' financial hardship, and that the release did not contain confidentiality language. In their Memorandum of Law in Response to Plaintiffs' Motion for Preliminary Approval, Defendants asserted that the current financial crisis – the "worst financial crisis since the Great Depression of the 1930s" – has had a "dramatic negative effect on the Defendants' businesses." In particular, Defendants claimed the following effect on the Fireman Group restaurants:

> Sales and covers (number of tables served) have dropped dramatically in October and November, just after the collapse of the capital markets. The Defendants' restaurant sales dropped in October by 10%; to-go orders dropped by 15%; and banquet business dropped by 7%. For the year, restaurant sales have dropped by 7% to date, to-go orders by 10%, and banquet sales by 6%.

8

Defendants further asserted that "cost-cutting [would] be necessary to compensate for continued decreases in revenue," and that they would have to do "whatever is necessary to weather this economic storm." In their supporting affidavit, Defendants forecast that "sales at Defendants' restaurants will drop by 11% in 2009, and sales in 2010 are anticipated to be 6% less than 2008 sales." A true and correct copy of Defendants' Response to Plaintiffs' Motion for Preliminary Approval, and Exhibit 8 in support thereof, are attached as **Exhibit K.**

41. On December 5, 2008, Plaintiffs filed their Reply Memorandum of Law in support of their Motion for Preliminary Approval in which Plaintiffs argued that the mediator's payment schedule should be enforced, that the proposed allocation formula was reasonable, that Defendants' objections to the service payments were premature and without merit, and that Defendants should be sanctioned for contempt.

42. On December 8, 2008, the Court ordered Defendants to satisfy their payment obligations for September, October, November, and December 2008 by ensuring that $1,200,000 was deposited into the escrow account. The Court further ordered that Defendants produce a Confession of Judgment for the unpaid amount and a $600,000 Security Agreement in Sheldon and/or John Fireman's personal property. Attached as **Exhibit L** is a true and correct copy of a transcript from the hearing before Judge Crotty on December 8, 2008.

43. On December 16, 2008, Defendants produced a "Conditional Consent to Judgment" and a "Security Agreement." We believe that neither of these documents is properly drafted and are in the process of attempting to resolve this issue with Defendants without Court intervention.

44. On December 16, 2008, the Court granted Plaintiffs' Motion for Preliminary Approval. As part of the Preliminary Approval Order, the Court ordered Defendants to

9

immediately pay $850,000 into the Settlement Fund to cover the September 15, 2008, October 15, 2008, and November 15, 2008 payments in accordance with paragraph 3.1(B)(1)-(3) of the Settlement Agreement.  Attached hereto as **Exhibit M** is a true and correct copy of the Preliminary Approval Order dated December 16, 2008.

   45. On December 16, 2008, Defendants filed an Emergency Motion for Modification of Order asserting that Defendants had already complied with the Court's December 8, 2008 Order by paying $1,200,000 into the escrow account.  Defendants withdrew their motion on December 18, 2008.

   46. On December 18, 2008, the Court entered an Order clarifying the Preliminary Approval Order stating that it was not intended to contradict the Court's December 8, 2008 Order with respect to Defendants' payment obligations.  Attached hereto as **Exhibit N** is a true and correct copy of a Court Order dated December 18, 2008.

   47. On January 22, 2009, Defendants wrote a letter to the Court requesting a 9% interest rate on all payments due after January 1, 2009, and claiming, once again, financial hardship.  Defendants stated that "their business is suffering dramatically due to the worst economic conditions since the Great Depression."  Attached hereto as **Exhibit O** is a true and correct copy of  Defendants' letter to the Court dated January 22, 2009.

   48. On January 27, 2009, Plaintiffs wrote a letter to the Court requesting that, pursuant to the Wittenberg Ruling, Defendants be ordered to pay 14% interest on all payments due after January 1, 2009 due to their failure to produce the Security Agreement on October 1, 2008.  On January 29, 2009, the Court ordered Defendants to pay 9% interest on all future payments.  Attached hereto as **Exhibit P** are true and correct copies of a letter to the Court dated January 27, 2009, and the Court Order dated January 29, 2009.

49.     To date, Defendants have deposited $1,535,734.31 into their counsel's interest bearing escrow account, including $35,734.31 in interest.  As of March 13, 2009, there was $1,537,291.33 in the account.  Attached hereto as **Exhibit Q** is a true and correct copy of documents showing Defendants' payment history.

50.     For the claims of the Retaliation Plaintiffs, the parties have agreed to extend the deadline to complete the ADR Process until June 15, 2009.

**The Allocation Formula**

51.     There are four categories available to Class Members to receive points.

52.     First, Class Members will receive five points for every pay period that they worked during the NYLL class period, which is June 6, 2000 through April 1, 2007.  This recognizes the availability of unpaid wages and other damages available under the NYLL.

53.     Second, Class Members who worked at Shelly's, Fiorello's, Trattoria, Red Eye, and/or Bond 45, will receive one point for every pay period that they worked during the NYLL class period.  This recognizes that Class Members who worked at these restaurants (but not at Brooklyn Diner) were required to pay a portion of their tips to managers.

54.     Third, Class Members will receive four points for every pay period that they worked during the FLSA class period, which is September 29, 2003 through April 1, 2007.  This recognizes that 100% liquidated damages are likely available under the FLSA.

55.     Fourth, Class Members who filed a consent form to join this action before September 29, 2006 will receive an additional two points for every pay period that they worked during the FLSA class period.  This recognizes the increased value of their claims by having joined the lawsuit and tolled their statutes of limitations at an early date.

56.     After all of the points are allocated, they will be added together to obtain the total

11

Class Member Denominator ("Total Class Member Denominator").  Then, the points for each Class Member will be divided by the Total Class Member Denominator to obtain each Class Member's portion of the net settlement payment.  Each Rule 23 Class Member and FLSA Class Member will receive an individualized settlement amount based on the number of their total number of points.

57.     Judith E. Kramer, Deputy Solicitor of the U.S. Department of Labor from 1987 to 2003, reviewed the allocation formula and found that it is a "fair and reasonable attempt by the Parties to determine the relative strengths of the class members' claims regarding liability and the relative size of back-wage awards, should they prevail on those claims."   Attached hereto as **Exhibit R** is a true and correct copy of the Expert Report of Judith E. Kramer ("Kramer Expert Report").

**Notice and Class Member Response**

19.     Pursuant to the terms of the Settlement Agreement, the parties retained Settlement Services Inc. as the claims administrator ("Claims Administrator").

20.     We have hired Settlement Services Inc. to administer at least four other settlements, and we have been satisfied with their competence, professionalism, attention to detail, and overall results.  Additionally, in our experience, Settlement Services Inc.'s prices are reasonable, and in fact, on the low end for the industry.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2009 U.S. Dist. LEXIS 14391, at *6 (S.D.N.Y. Feb. 23, 2009) (finding SSI's prices and process reasonable).

21.     On January 12, 2009, the Claims Administrator mailed the Notice of Proposed

Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") to 1323 Class Members.[2]

22. Attached hereto as **Exhibit S** is a true and correct copy of the Notice, and attached hereto as **Exhibit T** is a true and correct copy of the Declaration of the Claims Administrator, Mark Patton, dated March 18, 2009 ("Patton Dec.").

23. The Notice advised Class Members, among other things, that they could submit a Claim Form or Release or exclude themselves from the settlement. No Class Member has objected to the Settlement[3] or requested exclusion. (Ex. T (Patton Dec.) ¶¶ 17-18.)

24. To date, 513 out of 1323 Class Members have submitted Claim Forms and Releases. (Ex. T (Patton Dec.) ¶ 16.) This response rate percentage represents a good return rate in litigation of this type.

25. Although the deadline for most Class Members to submit claim forms and releases, opt-out statements, and/or objections has already passed, approximately 60 Class Members have until March 25, 2009 to respond. We will provide a supplemental declaration from the Claims Administrator by March 30, 2009 with an updated summary of Class Member participation, exclusions, if any, and objections, if any.

26. Of the 513 Claim Form and Releases that have been submitted, 9 are from individuals not among the 1323 known Class Members, 11 were returned untimely, and an

---

[2] In Plaintiffs' Motion for Preliminary Approval, we stated that there were 1874 Class Members based on a class list that Defendants produced in June 2008. The June 2008 list, however, included employees who were not covered by the class definition in the Settlement Agreement.

[3] The Claims Administrator received 15 timely objections and 3 untimely objections from Named Plaintiffs and Class Representatives with respect to Class Counsel's fees. (Ex. T (Patton Dec.) ¶ 18.) The Class Representatives have informed us that they, as a group, want to rescind their objections. By letter dated March 11, 2009, 17 Class Representatives have already rescinded their objections. The Class Representatives are still in the process of getting in touch with one Class Representative who lives in California so that he can also sign the rescission letter.

additional 7 were returned without readable postmarks and, therefore, their timeliness cannot be determined. (Ex. T (Patton Dec.) ¶ 16.) Class Counsel and Defendants' counsel have conferred regarding the untimely Claim Forms that are untimely and/or have unreadable postmarks and decided to accept as valid the 11 untimely Claim Forms and Releases and the 7 that were returned without readable postmarks, subject to the Court's approval.

27. The average settlement amount for the 504 Class Members who filed Claim Forms and Release will be more than $6,478 plus interest before attorneys' fees and costs are deducted.

28. O&G has received numerous calls from Class Members and Class Representatives who, I am told, have reacted positively to the settlement. All 12 of the Named Plaintiffs support the settlement, as evidenced by their signatures on the Settlement Agreement. Several Named Plaintiffs who have spoken to other Class Members have reported favorable reactions. This factor weights in favor of preliminary approval.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 18th day of March, 2009
New York, New York.

  /s/ Justin M. Swartz_____
Justin M. Swartz
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000