# Exhibit  A

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
Anjana Samant  (AS 5163)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**ASIAN AMERICAN LEGAL DEFENSE & EDUCATION FUND**
Kenneth Kimerling (KK 5762)
Tushar J. Sheth (TS 5672)
99 Hudson Street, 12th Floor
New York, New York 10013
Telephone:  (212) 966-5932

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DAVID MOHNEY, SOLVIE KARLSTROM, BENJAMIN McGROARTY, CHRISTEL FERGUSON, CHRISTOPHER RUSKIS, JEFFREY BASKIN, SEKOU LUKE, MOHMMAMMED MAHBUBUR RAHMAN, JOGLUL ISLAM, GREG BIBENS, HELENA LILJEBLAD and WILLIAM SPAUGH, on behalf of themselves and all others similarly situated, and KIMBERLY CLAPSO, SCOTT DEBUS, ROY FORLONG, and ELVIS NUNEZ, ABDUR KHAN, JOSE LUIS ROQUE TAVAREZ, JOHN BERNARD, CHANTAL GEORGES, SEKOU LUKE, and MICHAEL BUONI individually,

Plaintiffs,

-against-

SHELLY'S PRIME STEAK, STONE CRAB & OYSTER BAR a/k/a SHELLY'S NEW YORK a/k/a SHELLY'S NEW YORK STEAKHOUSE AND OYSTER BAR; JOHNMAR LLC d/b/a SHELLY'S PRIME STEAK, STONE CRAB & OYSTER BAR; THE FIREMAN GROUP CAFÉ CONCEPTS, INC. a/k/a THE FIREMAN HOSPITALITY GROUP; FIORELLO'S ROMAN CAFÉ, INC. d/b/a/ FIORELLO'S ROMAN CAFÉ a/k/a CAFÉ FIORELLO'S; CIELI PARTNERS L.P. d/b/a TRATTORIA DELL'ARTE; RED EYE

**THIRD AMENDED CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

**06 Civ. 4270 (PAC)**



RECEIVED
JUN 04 2007
U.S.D.C. S.D.N.Y.
CASHIERS

(caption continued on next page)

GRILL, INC. d/b/a RED EYE GRILL; RED EYE
GRILL, L.P. d/b/a RED EYE GRILL; 45TH
STREET HOSPITALITY PARTNERS d/b/a
BOND 45 ITALIAN KITCHEN a/k/a BOND 45
ITALIAN KITCHEN STEAK & SEAFOOD;
BROOKLYN DINER USA, INC. d/b/a
BROOKLYN DINER U.S.A.; BROOKLYN
DINER USA, L.P. d/b/a BROOKLYN DINER
U.S.A.; SHELDON FIREMAN; JOHN FIREMAN;
KEVIN ROBINSON; WILLIAM DUFFY;
MICHAEL CHIN; MICHAEL WELSH; and
CARLO FUSCO,

                    **Defendants.**

David Mohney ("Mohney"), Solvie Karlstrom (" Karlstrom"), Benjamin
McGroarty ("McGroarty"), Christel Ferguson ("Ferguson"), Christopher Ruskis
("Ruskis"), Jeffrey Baskin ("Baskin"), Sekou Luke ("Luke"), Mohmammed Mahbubur
Rahman ("Rahman"), Joglul Islam ("Islam"), Greg Bibens ("Bibens"), Helena Liljeblad
("Liljeblad")and William Spaugh ("Spaugh") (collectively "Representative Plaintiffs"),
individually and on behalf of all others similarly situated as class representatives, and
Kimberly Clapso ("Clapso"), Scott Debus ("Debus"), Roy Forlong ("Forlong"), Elvis
Nunez (Nunez"), Abdur Khan ("Khan"), Jose Luis Roque Tavarez ("Roque Tavarez"),
John Bernard ("Bernard"), Chantal Georges ("Georges"), Sekou Luke ("Luke"), and
Michael Buoni ("Buoni") (collectively, "Retaliation Plaintiffs") ("Representative
Plaintiffs" and "Retaliation Plaintiffs" are referred to collectively as "Plaintiffs"),
individually, upon personal knowledge as to themselves and upon information and belief
as to other matters, allege as follows:

## INTRODUCTION

1.      This case is about a well-known group of upscale Manhattan restaurants, The
Fireman Group Café Concepts, Inc., that denied its workers minimum wage and overtime

compensation, unlawfully confiscated workers' hard-earned tips in order to supplement managers' salaries, failed to pay for low-wage workers' uniforms, and responded harshly and aggressively to punish workers who dared to complain about the restaurant group's unlawful practices.

2.      This restaurant group, The Fireman Group Café Concepts, Inc. ("The Fireman Group"), includes JohnMar LLC d/b/a Shelly's Prime Steak, Stone Crab & Oyster Bar ("Shelly's"), Fiorello's Roman Café, Inc. ("Fiorello's"), Cieli Partners, L.P. d/b/a/ Trattoria Dell'Arte ("Trattoria"), Red Eye Grill, Inc., Red Eye Grill, L.P. d/b/a Red Eye Grill ("Red Eye"), 45th Street Hospitality Partners d/b/a Bond 45 Italian Kitchen a/k/a Bond 45 Italian Kitchen Steak & Seafood ("Bond 45"), and Brooklyn Diner USA, Inc., Brooklyn Diner U.S.A., L.P., d/b/a Brooklyn Diner U.S.A. ("Brooklyn Diner").

3.      Shelly's, a dining institution in Manhattan located on 57th Street near Carnegie Hall, is frequented by thousands of tourists and local residents each year.  It is the cornerstone of The Fireman Group, a dining empire owned by renowned New York restaurateur, Defendant Sheldon Fireman.

4.      Fiorello's, a busy and popular Fireman Group restaurant, is located at 1900 Broadway, across the street from Lincoln Center.

5.      Trattoria, which features New York's largest antipasto bar, is located at 900 7th Avenue near Carnegie Hall.

6.      Red Eye, which displays two giant bronze dancing shrimp sculptures specially crafted in Italy, is located at 890 7th Avenue.

7.      Bond 45, an Italian steakhouse, is located at 154 West 45th Street in the Theater District.

3

8.      Brooklyn Diner, a Brooklyn "homestyle"-themed restaurant, is located across from Carnegie Hall at 212 West 57th Street.

9.      On its website, the Fireman Group claims to be "obsessive about hospitality." Unfortunately, however, this "hospitality" is delivered by workers who are routinely subjected to Fireman Group policies and practices that violate federal and state wage and hour laws.

## NATURE OF THE ACTION

10.     The Representative Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees of Defendants who elect to opt-into this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and specifically the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants, that have deprived Plaintiffs and others similarly situated of their earned wages.

11.     The Representative Plaintiffs also bring this action on behalf of themselves and all similarly situated current and former employees of Defendants, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the New York Labor Law ("NYLL") Article 6, §§ 190 et seq., and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations, as well as other provisions of the NYLL.

12.     The Retaliation Plaintiffs bring individual retaliation claims. Defendants retaliated against the Retaliation Plaintiffs for filing this lawsuit and for otherwise complaining about Defendants' violations of the wage and hour laws. This retaliation was part of a campaign of retaliation and intimidation designed to send a very clear

4

message to all of Defendants' employees: "Stand up for your rights and pay the price."

Retaliation was Defendants' standard operating procedure.

***Wage and Hour Violations***

13.    It was Defendants' company-wide policy and pattern or practice to ignore federal and state wage and hour laws, as described in this complaint. Plaintiffs and similarly situated workers were harmed by Defendants' unlawful policies and practices.

14.    Pursuant to Defendants' policies and practices, Defendants routinely violated the FLSA and the NYLL as follows:

15.    **Time Shaving:** Defendants routinely altered workers' time records by eliminating hours worked, and failed to compensate their workers for all of the time they spent working for Defendants' benefit. Defendants' payroll records indicate a pattern or practice of crossing out hours that workers recorded on their time records and replacing them with a reduced number of hours. As a result, Defendants failed to pay workers wages they lawfully earned.

16.    **Misappropriated Tips:** Defendants routinely took a portion of their workers' tips and distributed them to restaurant managers and other employees who were not eligible to receive tips.

17.    **Off-the-Clock Work:** Defendants knowingly required and permitted workers to work before and after they clocked-in and out of the time clock, without compensation.

18.    **Minimum Wage Violations:** Defendants routinely failed to pay their workers the proper statutory minimum wage for all hours worked.

19.    **Unpaid Overtime:** In addition to failing to pay workers for time worked,

some of which was overtime, defendants also engaged in a practice of issuing two paychecks to workers who worked more than 40 hours in a workweek in order to hide their overtime hours. As a result, Defendants denied workers the overtime premium compensation they lawfully earned.

20.    **Uniform Expenses:** Defendants failed to pay for the purchase and laundering of uniforms it required workers to wear.

21.    **Call-In Pay:** Defendants routinely required workers to report to work for their scheduled shifts and then sent them home early without paying them for the minimum number of hours that the law requires them to be paid.

22.    **Spread of Hours Pay:** Defendants regularly required workers to work more than 10 hours in a day without paying them additional compensation, as required by law.

23.    **Unlawful Deductions:** Defendants made unlawful deductions from workers' compensation, including but not limited to deductions for credit card fees, breakage, and spillage, and unpaid customer checks, thereby passing a cost of doing business on to its workers.

*Fraud*

24.    Defendants also engaged in fraud by intentionally making misrepresentations or omissions of material fact in time and attendance records and payroll records and paychecks. Management-level employees routinely altered time and attendance records to understate workers' true earnings. These edits did not reflect the workers' actual hours and caused siginificant lost wages to the class.

25.    This lawsuit is not the only challenge Defendants' unlawful pay practices. On January 18, 2006, several Red Eye employees filed an action similar to this one,

*Arroyo et al. v. Redeye Grill, LP et al.*, No. 01-00381 (PAC) ("*Arroyo*"). The *Arroyo* action has grown to include at least 50 individual plaintiffs.

**Widespread Retaliation**

26.      Throughout the relevant period, it was Defendants' company-wide policy and pattern or practice to retaliate against workers who complained about wage and hour violations.

27.      Retaliation against workers who complain about their wage and hour rights was part of Defendants' corporate culture. Defendants routinely responded aggressively to complaints about labor law violations by punishing workers who complained and by confusing and frightening other workers through intimidating or misleading statements. These tactics all served Defendants' goal: to dissuade workers from asserting their rights at all costs.

28.      There was nothing subtle about Defendants' tactics. Defendants repeatedly urged workers not to join the lawsuit and misled them about the legality of its practices. It distributed misleading memoranda to workers about their legal claims, gathered workers for mandatory meetings and one-on-one sessions designed to convince the workers not to join this case, gave workers half-baked legal advice that Defendants were in compliance with the law, and made it clear that workers who press forward with the case will face repercussions.

29.      Defendants threatening and intimidating statements to workers who had not yet joined this action included, but were not limited to, the following: Defendants told workers words to the effect that, if they joined the action, they would be fired; that their lives would be made "very uncomfortable;" and that "bad things" would happen to them.

Workers were told that they had "no business" raising wage and hour complaints and that joining the lawsuit was "disloyal." Defendants threatened to "play games" with workers who joined the lawsuit so that they would "quit on their own."

30.     And Defendants did, in fact, retaliate. Defendants began their campaign of retaliation even before this lawsuit was filed. When a group of Redeye workers delivered a formal written complaint letter to Defendant Sheldon Fireman, and subsequently filed the *Arroyo* case, the *Arroyo* defendants struck back – firing many workers, and otherwise retaliating against them for acting to protect their rights.

31.     Several of the *Arroyo* defendants are also defendants in this case: The Fireman Group Café Concepts, Inc. a/k/a The Fireman Hospitality Group; Red Eye Grill, Inc.; Red Eye Grill, L.P.; Sheldon Fireman; Kevin Robinson; William Duffy and Michael Chin.

32.     When Plaintiffs from other Fireman Group restaurants delivered formal written demand letters to Fireman, and subsequently joined this lawsuit, Defendant's continued their retaliatory campaign, punishing many of these workers for standing up for their rights. This consisted of terminating workers, peppering their files with undeserved write-ups, changing their shifts, threatening them, and subjecting them to other abusive conduct. In one instance, one defendant physically attacked a worker in retaliation for complaining.

33.     Also, as further retaliation, Defendants opposed unemployment applications filed by at least two workers whom Defendants discharged or constructively discharged.

34.     On July 11, 2006, the *Arroyo* plaintiffs moved for a preliminary injunction, which the Honorable Paul A. Crotty granted, ordering the *Arroyo* defendants not to take

8

any further retaliatory adverse employment actions against the *Arroyo* plaintiffs or anyone who testified on their behalf.

35.     On September 26, 2006, Plaintiffs in this case also moved for a preliminary injunction. Faced with the risk of another adverse finding, on October 2, 2006, Defendants agreed to a Consent Order that subjected all of Defendants' restaurants to the same injunction that the Court issued in *Arroyo*, and provided other relief.

## THE PARTIES

*Representative Plaintiffs*

### David Mohney

36.     Mohney is an adult individual who is a resident of New York, New York.

37.     Mohney was employed by Defendants as a server at Shelly's from approximately September 2001 through approximately May 2004.

38.     Mohney has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

39.     Mohney is a covered employee within the meaning of the FLSA and the NYLL.

### Solvie Karlstrom

40.     Karlstrom is an adult individual who is a resident of New York, New York.

41.     Karlstrom was employed by Defendants as a server at Shelly's from approximately October 2002 through approximately November 2004.

42.     Karlstrom has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

9

43.     Karlstrom is a covered employee within the meaning of the FLSA and the NYLL.

**Benjamin McGroarty**

44.     McGroarty is an adult individual who is a resident of Los Angeles, California.

45.     McGroarty was employed by Defendants as a server at Shelly's from approximately July 2001 through approximately December 2005.

46.     McGroarty has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

47.     McGroarty is a covered employee within the meaning of the FLSA and the New York Labor Law.

**Christel Ferguson**

48.     Ferguson is an adult individual who is a resident of Queens, New York.

49.     Ferguson was employed by Defendants as a server at Shelly's from approximately September 2002 through approximately February 2004.

50.     Ferguson has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

51.     Ferguson is a covered employee within the meaning of the FLSA and the NYLL.

**Christopher Ruskis**

52.     Ruskis is an adult individual who is a resident of New York, New York.

53.     Ruskis has been employed by Defendants as a server at Fiorello's since March 2005.

54.     Ruskis has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

55.     Ruskis is a covered employee within the meaning of the FLSA and the New York Labor Law.

**Jeffrey Baskin**

56.     Baskin is an adult individual who is a resident of New York, New York.

57.     Baskin has been employed by Defendants as a server at Trattoria from March 2000 to the present.

58.     Baskin has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

59.     Baskin is a covered employee within the meaning of the FLSA and the New York Labor Law.

**Sekou Luke**

60.     Luke is an adult individual who is a resident of New York, New York.

61.     Luke has been employed by Defendants as a server at Fiorello's from May 2003 to the present.

62.     Luke has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

63.     Luke is a covered employee within the meaning of the FLSA and the New York Labor Law.

**Mohmammed Mahbubur Rahman**

64.     Rahman is an adult individual who is a resident of New York, New York.

65.     Rahman has been employed by Defendants as a busser at Fiorello's from

11

March 2000 to the present.

66.      Rahman has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

67.      Rahman is a covered employee within the meaning of the FLSA and the New York Labor Law.

**Joglul Islam**

68.      Islam is an adult individual who is a resident of New York, New York.

69.      Islam was been employed by Defendants as a busser at Red Eye from September 1997 to December 2005.  Islam was also employed as a busser at Bond 45 from December 2005 to February 2006.

70.      Islam has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

71.      Islam is a covered employee within the meaning of the FLSA and the New York Labor Law.

**Greg Bibens**

72.      Bibens is an adult individual who is a resident of New York, New York.

73.      Bibens has been employed by Defendants as a server at Bond 45 from March 2005 to August 2005.

74.      Bibens has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

75.      Bibens is a covered employee within the meaning of the FLSA and the New York Labor Law.

**Helena Liljeblad**

76.    Liljeblad is an adult individual who is a resident of New York, New York.

77.    Liljeblad has been employed by Defendants as a server at Brooklyn Diner from Fall 2001 to present.

78.    Liljeblad has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

79.    Liljeblad is a covered employee within the meaning of the FLSA and the New York Labor Law.

**William Spaugh**

80.    Spaugh is an adult individual who is a resident of New York, New York.

81.    Spaugh has been employed by Defendants as a server at Brooklyn Diner from 1998 to present.

82.    Spaugh has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

83.    Spaugh is a covered employee within the meaning of the FLSA and the New York Labor Law.

*Retaliation Plaintiffs*

**Kimberly Clapso**

84.    Clapso is an adult individual who is a resident of Astoria, New York.

85.    Clapso has been employed by Defendants as a server at Fiorello's from approximately August 2005 until the present.

86.    Clapso has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

87.     Clapso is a covered employee within the meaning of the FLSA and the New York Labor Law.

88.     Defendants unlawfully retaliated against Clapso because she acted to protect her right to be paid according to the FLSA and NYLL.

**Scott Debus**

89.     Debus is an adult individual who is a resident of Charlotte, South Carolina.

90.     Debus has been employed by Defendants as a server at Fiorello's from approximately July 2000 until the present.

91.     Debus has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

92.     Debus is a covered employee within the meaning of the FLSA and the New York Labor Law.

93.     Defendants unlawfully retaliated against Debus because he acted to protect his right to be paid according to the FLSA and NYLL.

**Roy Forlong**

94.     Forlong is an adult individual who is a resident of Middle Village, New York.

95.     Forlong was employed by Defendants as a server at Fiorello's from approximately July 1, 2004 until June 30, 2006.

96.     Forlong has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

97.     Forlong is a covered employee within the meaning of the FLSA and the New York Labor Law.

98.     Defendants unlawfully retaliated against Forlong because he acted to protect his right to be paid according to the FLSA and NYLL.

**Elvis Nunez**

99.     Nunez is an adult individual who is a resident of New York, New York.

100.    Nunez has been employed by Defendants as a busser at Fiorello's from approximately July 2005 until the present.

101.    Nunez has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

102.    Nunez is a covered employee within the meaning of the FLSA and the New York Labor Law.

103.    Defendants unlawfully retaliated against Nunez because he acted to protect his right to be paid according to the FLSA and NYLL.

**Abdur Khan**

104.    Khan is an adult individual who is a resident of Brooklyn, New York.

105.    Khan was employed by Defendants as a busser at Fiorello's from approximately April 2002 until July 30, 2006.

106.    Khan has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

107.    Khan is a covered employee within the meaning of the FLSA and the New York Labor Law.

108.    Defendants unlawfully retaliated against Khan because he acted to protect his right to be paid according to the FLSA and NYLL.

**Jose Luis Roque Tavarez**

15

109.     Roque Tavarez is an adult individual who is a resident of New York, New York.

110.     Roque Tavarez was employed by Defendants as a busser, barback, and bartender at Fiorello's from approximately April 2004 until August 31, 2006.

111.     Roque Tavarez has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

112.     Roque Tavarez is a covered employee within the meaning of the FLSA and the New York Labor Law.

113.     Defendants unlawfully retaliated against Roque Tavarez because he acted to protect his right to be paid according to the FLSA and NYLL.

**John Bernard**

114.     Bernard is an adult individual who is a resident of Long Island City, New York.

115.     Bernard has been employed by Defendants as a server at Fiorello's from approximately September 2002 until the present

116.     Bernard has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

117.     Bernard is a covered employee within the meaning of the FLSA and the New York Labor Law.

118.     Defendants unlawfully retaliated against Bernard because he acted to protect his right to be paid according to the FLSA and NYLL.

**Chantal Georges**

119.    Georges is an adult individual who is a resident of Jackson Heights, New York.

120.    Georges has been employed by Defendants as a server at Fiorello's from approximately December 2001 until the present.

121.    Georges has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

122.    Georges is a covered employee within the meaning of the FLSA and the New York Labor Law.

123.    Defendants unlawfully retaliated against Georges because she acted to protect her right to be paid according to the FLSA and NYLL.

**Sekou Luke**

124.    Luke is an adult individual who is a resident of New York, New York.

125.    Luke has been employed by Defendants as a server at Fiorello's from May 2003 to the present.

126.    Luke has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

127.    Luke is a covered employee within the meaning of the FLSA and the New York Labor Law.

**Michael Buoni**

128.    Buoni is an adult individual who is a resident of Sunnyside, New York.

129.    Buoni was been employed by Defendants as a server at Trattoria from June 1999 until July 27, 2006.

17

130.     Buoni has consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).

131.     Buoni is a covered employee within the meaning of the FLSA and the New York Labor Law.

132.     Defendants unlawfully retaliated against Buoni because he acted to protect his right to be paid according to the FLSA and NYLL.

### *Defendants*

133.     Shelly's Prime Steak, Stone Crab & Oyster Bar; JohnMar LLC d/b/a Shelly's Prime Steak, , Stone Crab & Oyster Bar; The Fireman Group Café Concepts, Inc.; Fiorello's Roman Café, Inc., d/b/a Fiorello's Roman Café a/k/a Café Fiorello's; Cieli Partners, L.P., d/b/a/ Trattoria Dell'arte; Red Eye Grill, Inc. d/b/a/ Red Eye Grill; Red Eye Grill, L.P., d/b/a/ Red Eye Grill; 45th Street Hospitality Partners d/b/a Bond 45 Italian Kitchen, a/k/a  Bond 45 Italian Kitchen Steak & Seafood; Brooklyn Diner U.S.A., Inc., d/b/a Brooklyn Diner U.S.A.; Brooklyn Diner U.S.A, L.P. d/b/a Brooklyn Diner U.S.A., Sheldon Fireman, John Fireman, Kevin Robinson, William Duffy, Michael Chin, Michael Welsh, and Carlo Fusco (collectively "Defendants") jointly employed Plaintiffs and similarly situated employees at all times relevant.  Each Defendant has had substantial control over Plaintiffs' working conditions, and over the unlawful polices and practices alleged herein.

### Shelly's Prime Steak, Stone Crab & Oyster Bar

134.     Shelly's Prime Steak, Stone Crab & Oyster Bar is a restaurant formerly located at 104 W. 57th Street, New York, New York and now located at 41 West 57th Street, New York, New York.

18

135.    Shelly's is also known as Shelly's New York Steakhouse and Oyster Bar and as Shelly's New York.

136.    Shelly's is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs David Mohney, Christel Ferguson, and Solvie Karlstrom and similarly situated employees.

137.    Upon information and belief, at all times relevant, Shelly's annual gross volume of sales made or business done was not less than $500,000.

**JohnMar LLC**

138.    Defendant JohnMar LLC is a corporation organized and existing under the laws of the State of New York with its principal executive office located at 888 7th Avenue, New York, New York.

139.    Upon information and belief, at all times relevant, JohnMar LLC owned and operated Shelly's and did business as Shelly's Prime Steak.

140.    Upon information and belief, JohnMar LLC is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs David Mohney, Christel Ferguson, and Solvie Karlstrom and similarly situated employees.

141.    Upon information and belief, at all times relevant, JohnMar LLC's annual gross volume of sales made or business done was not less than $500,000.

**Fiorello's Roman Café, Inc.**

142.    Fiorello's Roman Café, Inc. is a restaurant located at 1900 Broadway, New York, New York.

143.    Fiorello's is also known as Café Fiorello's and Fiorello's Roman Café.

Fiorello's is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiff Sekou Luke and similarly situated employees.

144.    Upon information and belief, at all times relevant, Fiorello's annual gross volume of sales made or business done was not less than $500,000.

**Trattoria Dell'Arte**

145.    Trattoria Dell'Arte is a restaurant located at 900 7th Avenue, New York, New York.

146.    Trattoria is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiff Jeffrey Baskin and similarly situated employees.

147.    Upon information and belief, at all times relevant, Trattoria's annual gross volume of sales made or business done was not less than $500,000.

**Cieli Partners, L.P.**

148.    Defendant Cieli Partners, L.P. is a corporation organized and existing under the laws of the State of New York with its principal executive office located at 1081 Third Avenue, New York, New York.

149.    Upon information and belief, at all times relevant, Cieli Partners, L.P. owned and operated Trattoria Dell'Arte and did business as Trattoria Dell'Arte.

150.    Upon information and belief, Cieli Partners, L.P. is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiff Jeffrey Baskin and similarly situated employees.

151.    Upon information and belief, at all times relevant, Cieli Partners, L.P.'s

20

annual gross volume of sales made or business done was not less than $500,000.

**Red Eye Grill, Inc.**

152.     Defendant Red Eye Grill, Inc. is a corporation organized and existing under the laws of the State of New York with its principal executive office located at 20 West 44th Street, New York, New York.

153.     Upon information and belief, at all times relevant, Red Eye Grill, Inc. owned and operated Red Eye Grill and did business as Red Eye Grill.

154.     Upon information and belief, Red Eye Grill, Inc. is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiff Joglul Islam and similarly situated employees

155.     Upon information and belief, at all times relevant, Red Eye Grill, Inc.'s annual gross volume of sales made or business done was not less than $500,000.

**Red Eye Grill, L.P.**

156.     Defendant Red Eye Grill, L.P. is a corporation organized and existing under the laws of the State of New York with its principal executive office located at 888 Seventh Avenue, New York, New York.

157.     Upon information and belief, at all times relevant, Red Eye Grill, L.P. owned and operated Red Eye Grill and did business as Red Eye Grill.

158.     Upon information and belief, Red Eye Grill, L.P. is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiff Joglul Islam and similarly situated employees.

159.     Upon information and belief, at all times relevant, Red Eye Grill, L.P.'s annual gross volume of sales made or business done was not less than $500,000.

### 45th Street Hospitality Partners, LLC

160.    Defendant 45th Street Hospitality Partners, LLC, is a corporation organized and existing under the laws of the State of New York with its principal executive office located at 888 Seventh Avenue, New York, New York.

161.    Upon information and belief, at all times relevant, 45th Street Hospitality Partners, LLC, owned and operated Bond 45 Italian Kitchen and did business as Bond 45 Italian Kitchen.

162.    Upon information and belief, Bond 45 Italian Kitchen is also known as Bond 45 Italian Kitchen Steak and Seafood.

163.    Upon information and belief, 45th Street Hospitality Partners, LLC, is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiff Greg Bibens and similarly situated employees.

164.    Upon information and belief, at all times relevant, 45th Street Hospitality Partners, LLC's annual gross volume of sales made or business done was not less than $500,000.

### Brooklyn Diner U.S.A., Inc.

165.    Defendant Brooklyn Diner U.S.A., Inc. is a corporation organized and existing under the laws of the State of New York with its principal executive office located at 20 West 64th Street, New York, New York.

166.    Upon information and belief, at all times relevant, Brooklyn Diner U.S.A., Inc. owned and operated Brooklyn Diner U.S.A. and did business as Brooklyn Diner U.S.A.

167.     Upon information and belief, Brooklyn Diner U.S.A., Inc. is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs Helena Liljeblad and William Spaugh and similarly situated employees.

168.     Upon information and belief, at all times relevant, Brooklyn Diner U.S.A., Inc.'s annual gross volume of sales made or business done was not less than $500,000.

**Brooklyn Diner U.S.A., L.P.**

169.     Defendant Brooklyn Diner U.S.A., L.P. is a corporation organized and existing under the laws of the State of New York with its principal executive office located at 888 Seventh Avenue, New York, New York.

170.     Upon information and belief, at all times relevant, Brooklyn Diner U.S.A., L.P. owned and operated Brooklyn Diner U.S.A. and did business as Brooklyn Diner U.S.A.

171.     Upon information and belief, Brooklyn Diner U.S.A., L.P. is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs Helena Liljeblad and William Spaugh and similarly situated employees.

172.     Upon information and belief, at all times relevant, Brooklyn Diner U.S.A., L.P.'s annual gross volume of sales made or business done was not less than $500,000.

**The Fireman Group Café Concepts, Inc.**

173.     Defendant The Fireman Group Café Concepts, Inc. is a corporation organized and existing under the laws of the State of New York with its principal executive office located at 888 Seventh Avenue, Suite 203, New York, New York.

174.    Upon information and belief, at all times relevant, The Fireman Group Café Concepts, Inc. owned and operated Shelly's and did business as Shelly's.

175.    Upon information and belief, at all times relevant, The Fireman Group Café Concepts, Inc. owned and operated Fiorello's Roman Café and did business as Fiorello's Roman Café a/k/a Café Fiorello's.

176.    Upon information and belief, at all times relevant, The Fireman Group Café Concepts, Inc. owned and operated Trattoria Dell'Arte and did business as Trattoria Dell'Arte.

177.    Upon information and belief, at all times relevant, The Fireman Group Café Concepts, Inc. owned and operated Red Eye Grill and did business as Red Eye Grill.

178.    Upon information and belief, at all times relevant, The Fireman Group Café Concepts, Inc. owned and operated Bond 45 Italian Kitchen a/k/a/ Bond 45 Italian Kitchen Steak & Seafood and did business as Bond 45 Italian Kitchen.

179.    Upon information and belief, at all times relevant, The Fireman Group Café Concepts, Inc. owned and operated Brooklyn Diner U.S.A. and did business as Brooklyn Diner U.S.A.

180.    The Fireman Group Café Concepts, Inc. is also known as The Fireman Hospitality Group and does business as The Fireman Hospitality Group.

181.    Upon information and belief, at all times relevant, The Fireman Group Café Concepts, Inc. maintained control, oversight, and direction over the operation of Shelly's, Fiorello's, Trattoria, Red Eye, Bond 45, and Brooklyn Diner, including over employment practices.

182.    The Fireman Group is a covered employer within the meaning of the FLSA

and the NYLL and at all times relevant,  employed and/or jointly employed Plaintiffs and similarly situated employees.

183.     Upon information and belief, at all times relevant, The Fireman Group's annual gross volume of sales made or business done was not less than $500,000.

**Sheldon Fireman**

184.     Upon information and belief, at all times relevant, Sheldon Fireman ("Fireman") has been the Chief Executive Officer of The Fireman Group and a co-owner and/or partner of the Fireman Hospitality Group, and upon information and belief, other Defendants including JohnMar LLC d/b/a Shelly's Prime Steak, Fiorello's Roman Café, Inc. d/b/a/ Fiorello's Roman Cafe, Cieli Partners, L.P. d/b/a/ Trattoria Dell'Arte, Red Eye Grill, Inc., Red Eye Grill, L.P. d/b/a Red Eye Grill, 45th Street Hospitality Partners, LLC d/b/a Bond 45 Italian Kitchen, Brooklyn Diner U.S.A., Inc., Brooklyn Diner U.S.A., L.P., d/b/a Brooklyn Diner and has taken an active role in managing the Fireman Hospitality Group, Defendant corporations and partnerships, and Defendant restaurants.

185.     Upon information and belief, at all times relevant, Fireman has had the power to hire and fire employees, including Plaintiffs, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.  Upon information and belief, at all times relevant, Fireman has also had the power to stop any illegal pay practices that harmed Plaintiffs.

186.     Fireman is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

187.     Fireman is an agent of Shelly's, Fiorello's, Trattoria, Red Eye, Bond 45,

Brooklyn Diner, and The Fireman Group.

**John Fireman**

188.     Upon information and belief, at all times relevant, John Fireman ("J. Fireman") has been a co-owner and/or partner of the Fireman Hospitality Group and, upon information and belief, other Defendants , and upon information and belief, other Defendants including JohnMar LLC d/b/a Shelly's Prime Steak, Fiorello's Roman Café, Inc. d/b/a/ Fiorello's Roman Cafe, Cieli Partners, L.P. d/b/a/ Trattoria Dell'Arte, Red Eye Grill, Inc., Red Eye Grill, L.P. d/b/a Red Eye Grill, 45th Street Hospitality Partners, LLC d/b/a Bond 45 Italian Kitchen, Brooklyn Diner U.S.A., Inc., Brooklyn Diner U.S.A., L.P., d/b/a Brooklyn Diner and has taken an active role in managing the Fireman Hospitality Group, Defendant corporations and partnerships, and Defendant restaurants.

189.     Upon information and belief, at all times relevant, J. Fireman has had the power to hire and fire employees, including Plaintiffs, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.  Upon information and belief, at all times relevant, J. Fireman has also had the power to stop any illegal pay practices that harmed Plaintiffs.

190.     J. Fireman is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

191.     J. Fireman is an agent of Shelly's, Fiorello's, Trattoria, Red Eye, Bond 45, Brooklyn Diner, and The Fireman Group.

**Kevin Robinson**

192.     Upon information and belief, at all times relevant, Defendant Kevin

26

Robinson ("Robinson") has been the Chief Operating Officer of The Fireman Group.

193.    Upon information and belief, at all times relevant, Robinson has had the power to hire and fire employees, including Plaintiffs, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.  Upon information and belief, at all times relevant, Robinson has also had the power to stop any illegal pay practices that harmed Plaintiffs.

194.    Robinson is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

195.    Robinson is an agent of Shelly's, Fiorello's, Trattoria, Red Eye, Bond 45, Brooklyn Diner, and The Fireman Group.

196.    Robinson is a part-owner of Bond 45.

**William Duffy**

197.    Upon information and belief, at all times relevant, Defendant William Duffy ("Duffy") has been the Chief Financial Officer of The Fireman Group.

198.    Upon information and belief, at all times relevant, Duffy has had the power to hire and fire employees, including Plaintiffs, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.  Upon information and belief, at all times relevant, Duffy has also had the power to stop any illegal pay practices that harmed Plaintiffs.

199.    Duffy n is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

200.    Duffy is an agent of Shelly's, Fiorello's, Trattoria, Red Eye, Bond 45, Brooklyn Diner, and The Fireman Group.

201.    Duffy is a part-owner of Red Eye Grill.

**Michael Chin**

202.    Upon information and belief, at all times relevant, Defendant Michael Chin ("Chin") has been the Vice President of Operations of The Fireman Group.

203.    Upon information and belief, at all times relevant, Chin has had the power to hire and fire employees, including Plaintiffs, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment. Upon information and belief, at all times relevant, Chin has also had the power to stop any illegal pay practices that harmed Plaintiffs.

204.    Chin is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

205.    Chin is an agent of Shelly's, Fiorello's, Trattoria, Red Eye, Bond 45, Brooklyn Diner, and The Fireman Group.

206.    Chin is a part-owner of Bond 45.

**Michael Welsh**

207.    Upon information and belief, at all times relevant, Defendant Michael Welsh ("Welsh") has been the General Manager of Shelly's.

208.    Upon information and belief, at all times relevant, Welsh has had the power to hire and fire employees, including Plaintiffs, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment. Upon

information and belief, at all times relevant, Welsh has also had the power to stop any illegal pay practices that harmed Plaintiffs.

209.     Welsh is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

210.     Welsh is an agent of Shelly's and The Fireman Group.

**Carlo Fusco**

211.     Upon information and belief, at all times relevant, Defendant Carlo Fusco ("Fusco") has been the General Manager of Fiorello's.

212.     Upon information and belief, at all times relevant, Fusco has had the power to hire and fire employees, including Plaintiffs, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.  Upon information and belief, at all times relevant, Fusco has also had the power to stop any illegal pay practices that harmed Plaintiffs.

213.     Fusco is a covered employer within the meaning of the FLSA and the NYLL and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

214.     Fusco is an agent of Fiorello's and The Fireman Group.

## JURISDICTION AND VENUE

215.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

216.     The amount in controversy in this matter exceeds the sum or value of

$5,000,000, exclusive of interest and costs.

217.    At least one member of the proposed class is a citizen of a state different from that of Defendants.

218.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

219.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

220.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

## CLASS ACTION ALLEGATIONS

221.    Representative Plaintiffs bring the Fifth, Sixth, Seventh, Eighth, Nineth, Tenth, Eleventh, Twelfth, Thirteenth and Fourteenth Causes of Action (NYLL claims) under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of

> all persons who have worked as servers, runners, and bussers at Defendants' restaurants between June 7, 2000 and the date of final judgment in this matter

(the "Rule 23 Class").

222.    Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Shelly's, Fiorello's, Trattoria, Red Eye, Bond 45, Brooklyn Diner, or The Fireman Group; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from

the Rule 23 Class.

223.    The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

224.    Upon information and belief, the size of the Rule 23 Class is over 400 people. Although the precise number of such employees is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants.

225.    Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

226.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a) whether Defendants violated NYLL Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Parts 137, as alleged herein;

(b) whether Defendants failed to pay Representative Plaintiffs and the Rule 23 Class the applicable minimum wage under the NYLL;

(c) whether Defendants misappropriated tips from Representative Plaintiffs and the Rule 23 Class;

(d) whether Defendants failed to pay Representative Plaintiffs and the Rule 23 Class the applicable minimum wage under NYLL;

(e) whether Defendants' tip pooling scheme was created through the mutual agreement of Representative Plaintiffs and the Rule 23 Class;

(f) whether Defendants imposed upon Plaintiffs a tip redistribution or sharing scheme to which they had never agreed and regarding which they had never been consulted;

(g) whether Defendants made unlawful deductions from the wages of Representative Plaintiffs and the Rule 23 Class;

(h) whether Defendants correctly calculated and compensated Representative Plaintiffs and the Rule 23 Class for hours worked in excess of 40 per workweek;

(i) whether Defendants failed to provide Representative Plaintiffs and the Rule 23 Class spread-of-hours compensation as required by the NYLL;

(j) whether Defendants failed to provide Representative Plaintiffs and the Rule 23 Class call-in or show up pay as required by the NYLL;

(k) whether Defendants failed to keep true and accurate time and pay records for all hours worked by their employees, and other records required by the NYLL;

(l) whether Defendants failed to comply with the posting and notice requirements of the NYLL;

(m) whether Defendants failed to furnish Representative Plaintiffs and the Rule 23 Class with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance as required by the NYLL;

(n) whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(o) the nature and extent of class-wide injury and the measure of damages for those injuries.

227.     The claims of Representative Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent.  Representative Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants as hourly food-service employees. Representative Plaintiffs and the members of the Rule 23 Class enjoy the same statutory rights under the New York Labor Law to be paid for all hours worked, to be paid minimum and overtime wages, and to keep the tips they earn.  Representative Plaintiffs and the members of the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the New York Labor Law.  Representative Plaintiffs and the members of the Rule 23 Class have been injured in that they have been uncompensated or undercompensated due to Defendants' common policies, practices,

and patterns.

228.     Representative Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class.  Representative Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.  There is no conflict between the Representative Plaintiffs and the members of the Rule 23 Class.

229.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violation of the New York Labor Law as well as their common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Rule 23 Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs lack the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

230.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## COLLECTIVE ACTION ALLEGATIONS

231.     Plaintiffs bring the First, Second, Third, and Fourth Causes of Action (FLSA claims) on behalf of themselves and all similarly situated persons who have worked at Defendants' restaurants as servers, runners, and bussers who elect to opt-in to this action (the "FLSA Collective").

232.     Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this complaint. Defendants' pattern, policy, and practice of violating the FLSA has harmed workers in all of Defendants' restaurants.

233.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs. Upon information and belief, there are many similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS-WIDE FACTUAL ALLEGATIONS

234.     Plaintiffs and the members of the Rule 23 Class and the FLSA Collective (collectively "Class Members") have been victims of Defendants' common policies and plans, perpetrated by Defendants that have violated the Class Members' rights under the FLSA and the NYLL by denying them minimum wage, overtime compensation, tips that they earned, and other wages. At all times, Defendants' policy and pattern or practice has been willful.

235.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the Class Members by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL as described in this Class Action Complaint. This policy and pattern or practice includes, but is not limited to the following:

34

a.      demanding, accepting, retaining, and/or denying Plaintiffs and Class Members tips that they earned;

b.      imposing upon workers a tip redistribution or sharing scheme to which they did not agreed and regarding which they were not consulted;

c.      redistributing portions of the tips earned by Plaintiffs and Class Members to employees not entitled to tips under the FLSA or the NYLL;

d.      failing to keep accurate and adequate records of wages paid to Plaintiffs and Class Members, tips they earned, deductions taken from their wages, allowances or other credits taken by Defendants, and hours worked by Plaintiffs and Class Members as required by the FLSA and the NYLL;

e.      failing to comply with the posting and/or notice requirements of the FLSA and the NYLL;

f.      failing to pay Plaintiffs and Class Members at least at the applicable minimum hourly wage rate under the FLSA and the NYLL for all hours worked;

g.      failing to pay Plaintiffs and Class Members proper overtime compensation (time-and-one-half of their regular rate) for the hours they worked in excess of 40 hours in a workweek;

h.      fraudulently altering time records to eliminate hours worked by Plaintiffs and the Class Members;

i.      making unlawful deductions from the wages of Plaintiffs and the Class Members;

      j.     failing to compensate Plaintiffs and the Class Members for the purchase, cleaning, care, and maintenance of the specific uniforms they required Plaintiffs and the Class Members to wear;

      k.     failing to pay Plaintiffs and Class Members split shift compensation that they earned;

      l.     failing to pay Plaintiffs and Class Members call-in pay that they earned;

      m.     failing to pay Plaintiffs and Class Members spread of hours compensation that they earned; and

      n.     retaliating against Plaintiffs and Class members for complaining about Defendants' wage and hour violations.

236.    Upon information and belief, Defendants' unlawful conduct described in this Complaint has been pursuant to a corporate policy or practice of minimizing labor costs and denying employees' compensation by knowingly violating the FLSA and NYLL.

237.    Defendants' unlawful conduct has been widespread, repeated, and consistent. Upon information and belief, Defendants' policies and practices described in this Class Action Complaint have been centrally promulgated and uniform throughout the Fireman Group restaurants.

238.    Defendants' unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and the Class Members.

239.    Defendants' deceptive and misleading conduct prevented Plaintiffs and the Class Members from discovering or asserting their FLSA and NYLL claims any earlier

than they did.  This deceptive and misleading conduct includes, but is not limited to concealing from Plaintiffs and the Class Members the existence of their FLSA and NYLL claims, intentionally misleading Plaintiffs and the Class Members by telling Plaintiffs and the Class Members that Defendants' conduct was not unlawful, and failing to post provisions of the FLSA and the NYLL as these laws require.

240.     Defendants have also intentionally intimidated potential class members, potential plaintiffs, potential opt-in plaintiffs, and potential witnesses for Plaintiffs and the putative class, and dissuaded them from joining this case.  By this intimidation, Defendants have limited the number of workers who have joined this lawsuit, and limited Plaintiffs' ability to develop evidence to support their case.  Defendants' retaliation, as described herein, has also dissuaded potential class members, potential plaintiffs, potential opt-in plaintiffs, and potential witnesses for Plaintiffs from participating in this case.

## REPRESENTATIVE PLAINTIFFS' FACTUAL ALLEGATIONS

241.     Consistent with their policies and patterns or practices as described herein, Defendants harmed each Plaintiff individually as follows:

**David Mohney**

242.     Defendants did not pay Mohney the proper minimum wage for all of the time that he was suffered or permitted to work each workweek.

243.     Defendants did not inform Mohney of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL.

244.     Defendants did not allow Mohney to retain all the tips he received.

245.   Defendants unlawfully demanded, retained, or received portions of the tips that Mohney earned.

246.   Defendants unlawfully redistributed part of Mohney's wages to employees in positions that do not customarily and regularly receive tips.

247.   Defendants did not pay Mohney proper overtime compensation for all of the time that he was suffered or permitted to work in excess of 40 hours per workweek.

248.   Defendants did not keep accurate records of wages or tips earned, or of hours worked by Mohney.

249.   Defendants made unlawful deductions for credit card service fees or charges from the tips earned by Mohney each workweek.

250.   Defendants did not compensate Mohney for the purchase, cleaning, care, and maintenance of the uniforms they required Mohney to wear while working at Shelly's.

251.   Defendants did not pay Mohney spread-of hours pay for shifts he worked of 10 hours or more.

252.   Defendants did not pay Mohney call-in pay for days when he worked at Shelly's for less than three hours.

253.   Defendants did not pay Mohney split-shift pay when he worked at Shelly's with more than an hour between shifts.

**Solvie Karlstrom**

254.   Defendants did not pay Karlstrom the proper minimum wage for all of the time that she was suffered or permitted to work each workweek.

255.   Defendants did not inform Karlstrom of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL.

38

256.    Defendants did not allow Karlstrom to retain all the tips she received.

257.    Defendants unlawfully demanded, retained, or received portions of the tips that Karlstrom earned.

258.    Defendants unlawfully redistributed part of Karlstrom's wages to employees in positions that do not customarily and regularly receive tips.

259.    Defendants did not pay Karlstrom proper overtime compensation for all of the time that she was suffered or permitted to work in excess of 40 hours per workweek.

260.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Karlstrom.

261.    Defendants made unlawful deductions for credit card service fees or charges from the tips earned by Karlstrom each workweek.

262.    Defendants did not compensate Karlstrom for the purchase, cleaning, care, and maintenance of the uniforms they required Karlstrom to wear while working at Shelly's.

263.    Defendants did not pay Karlstrom spread-of hours pay for shifts he worked of 10 hours or more.

264.    Defendants did not pay Karlstrom call-in pay for days when she worked at Shelly's for less than three hours.

265.    Defendants did not pay Karlstrom split-shift pay when she worked at Shelly's with more than an hour between shifts.

**Benjamin McGroarty**

266.    Defendants did not pay McGroarty the proper minimum wage for all of the time that he was suffered or permitted to work each workweek.

267.    Defendants did not inform McGroarty of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL.

268.    Defendants did not allow McGroarty to retain all the tips he received.

269.    Defendants unlawfully demanded, retained, or received portions of the tips that McGroarty earned.

270.    Defendants unlawfully redistributed part of McGroarty's wages to employees in positions that do not customarily and regularly receive tips.

271.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by McGroarty.

272.    Defendants made unlawful deductions for credit card service fees or charges from the tips earned by McGroarty each workweek.

273.    Defendants did not compensate McGroarty for the purchase, cleaning, care, and maintenance of the uniforms they required McGroarty to wear while working at Shelly's.

274.    Defendants did not pay McGroarty spread-of hours pay for shifts he worked of 10 hours or more.

275.    Defendants did not pay McGroarty call-in pay for days when he worked at Shelly's for less than three hours.

276.    Defendants did not pay McGroarty split-shift pay when he worked at Shelly's with more than an hour between shifts.

**Christel Ferguson**

277.     Consistent with their policy and pattern or practice, Defendants did not pay Ferguson the proper minimum wage for all of the time that she was suffered or permitted to work each workweek.

278.     Consistent with their policy and pattern or practice, Defendants did not inform Ferguson of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL.

279.     Consistent with their policy and pattern or practice, Defendants did not allow Ferguson to retain all the tips she received.

280.     Consistent with their policy and pattern or practice, Defendants unlawfully demanded, retained, or received portions of the tips that Ferguson earned.

281.     Consistent with their policy and pattern or practice, Defendants unlawfully redistributed part of Ferguson's wages to employees in positions that do not customarily and regularly receive tips.

282.     Consistent with their policy and pattern or practice, Defendants did not keep accurate records of wages or tips earned, or of hours worked by Ferguson.

283.     Consistent with their policy and pattern or practice, Defendants made unlawful deductions for credit card service fees or charges from the tips earned by Ferguson each workweek.

284.     Consistent with their policy and pattern or practice, Defendants did not compensate Ferguson for the purchase, cleaning, care, and maintenance of the uniforms they required Ferguson to wear while working at Shelly's.

285.    Defendants did not pay Ferguson spread-of hours pay for shifts she worked of 10 hours or more.

286.    Defendants did not pay Ferguson call-in pay for days when she worked at Shelly's for less than three hours.

287.    Defendants did not pay Ferguson split-shift pay when she worked at Shelly's with more than an hour between shifts.

**Christopher Ruskis**

288.    Consistent with their policy and pattern or practice, Defendants did not pay Ruskis the proper minimum wage for all of the time that he was suffered or permitted to work each workweek.

289.    Defendants did not pay Ruskis proper overtime compensation for all of the time that he was suffered or permitted to work in excess of 40 hours per workweek.

290.    Consistent with their policy and pattern or practice, Defendants did not inform Ruskis of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL.

291.    Consistent with their policy and pattern or practice, Defendants did not allow Ruskis to retain all the tips he received.

292.    Consistent with their policy and pattern or practice, Defendants unlawfully demanded, retained, or received portions of the tips that Ruskis earned.

293.    Consistent with their policy and pattern or practice, Defendants unlawfully redistributed part of Ruskis' wages to employees in positions that do not customarily and regularly receive tips.

294.    Consistent with their policy and pattern or practice, Defendants did not keep accurate records of wages or tips earned, or of hours worked by Ruskis.

295.    Consistent with their policy and pattern or practice, Defendants made unlawful deductions for credit card service fees or charges from the tips earned by Ruskis each workweek.

296.    Consistent with their policy and pattern or practice, Defendants did not compensate Ruskis for the purchase, cleaning, care, and maintenance of the uniforms they required Ruskis to wear while working at Fiorello's.

297.    Defendants did not pay Ruskis spread-of hours pay for shifts he worked of 10 hours or more.

298.    Defendants did not pay Ruskis call-in pay for days when he worked at Fiorello's for less than three hours.

299.    Defendants did not pay Ruskis split-shift pay when he worked at Fiorello's with more than an hour between shifts.

**Jeffrey Baskin**

300.    Consistent with their policy and pattern or practice, Defendants did not pay Baskin the proper minimum wage for all of the time that he was suffered or permitted to work each workweek.

301.    Defendants did not pay Baskin proper overtime compensation for all of the time that he was suffered or permitted to work in excess of 40 hours per workweek.

302.    Consistent with their policy and pattern or practice, Defendants did not inform Baskin of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL.

43

303.     Consistent with their policy and pattern or practice, Defendants did not allow Baskin to retain all the tips he received.

304.     Consistent with their policy and pattern or practice, Defendants unlawfully demanded, retained, or received portions of the tips that Baskin earned.

305.     Consistent with their policy and pattern or practice, Defendants unlawfully redistributed part of Baskin's wages to employees in positions that do not customarily and regularly receive tips.

306.     Consistent with their policy and pattern or practice, Defendants did not keep accurate records of wages or tips earned, or of hours worked by Baskin.

307.     Consistent with their policy and pattern or practice, Defendants made unlawful deductions for credit card service fees or charges from the tips earned by Baskin each workweek.

308.     Consistent with their policy and pattern or practice, Defendants did not compensate Baskin for the purchase, cleaning, care, and maintenance of the uniforms they required Baskin to wear while working at Trattoria.

309.     Defendants did not pay Baskin spread-of hours pay for shifts he worked of 10 hours or more.

310.     Defendants did not pay Baskin call-in pay for days when he worked at Trattoria's for less than three hours.

311.     Defendants did not pay Baskin split-shift pay when he worked at Trattoria with more than an hour between shifts.