# Exhibit  I

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DAVID MOHNEY, SOLVIE KARLSTROM,
BENJAMIN MCGROARTY, CHRISTEL
FERGUSON, CHRISTOPHER RUSKIS,
JEFFREY BASKIN, SEKOU LUKE,
MOHMAMMED MAHBUBUR RAHMAN,
JOGLUL ISLAM, GREG BIBENS, HELENA
LILJEBLAD and WILLIAM SPAUGH, on behalf
of themselves and all others similarly situated, and
KIMBERLY CLAPSO, SCOTT DEBUS, ROY
FORLONG, and ELVIS NUNEZ, ABDUR KHAN,
JOSE LUIS ROQUE TAVAREZ, JOHN
BERNARD, CHANTAL GEORGES, SEKOU
LUKE, and MICHAEL BUONI individually,

Plaintiffs,

-against-

SHELLY'S PRIME STEAK, STONE CRAB &
OYSTER BAR a/k/a SHELLY'S NEW YORK
a/k/a SHELLY'S NEW YORK STEAKHOUSE
AND OYSTER BAR; JOHNMAR LLC d/b/a
SHELLY'S PRIME STEAK, STONE CRAB &
OYSTER BAR; THE FIREMAN GROUP CAFÉ
CONCEPTS, INC. a/k/a THE FIREMAN
HOSPITALITY GROUP; FIORELLO'S ROMAN
CAFÉ, INC. d/b/a/ FIORELLO'S ROMAN CAFÉ
a/k/a CAFÉ FIORELLO'S; CIELI PARTNERS
L.P. d/b/a TRATTORIA DELL'ARTE; RED EYE
GRILL, INC. d/b/a RED EYE GRILL; RED EYE
GRILL, L.P. d/b/a RED EYE GRILL; 45TH
STREET HOSPITALITY PARTNERS d/b/a
BOND 45 ITALIAN KITCHEN a/k/a BOND 45
ITALIAN KITCHEN STEAK & SEAFOOD;
BROOKLYN DINER USA, INC. d/b/a
BROOKLYN DINER U.S.A.; BROOKLYN
DINER USA, L.P. d/b/a BROOKLYN DINER
U.S.A.; SHELDON FIREMAN; JOHN FIREMAN;
KEVIN ROBINSON; WILLIAM DUFFY;
MICHAEL CHIN; MICHAEL WELSH; and
CARLO FUSCO,

Defendants.

JOINT STIPULATION OF
SETTLEMENT AND
RELEASE

06 Civ. 4270 (PAC)

This Joint Stipulation of Settlement and Release, including all Exhibits hereto (collectively, the "Agreement"), is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined), on the one hand, and Defendants (as hereinafter defined).

## RECITALS

WHEREAS, Plaintiffs David Mohney, Solvie Karlstrom, Benjamin McGroarty, and Christel Ferguson filed their initial complaint on June 6, 2006; and

WHEREAS, David Mohney, Solvie Karlstrom, Benjamin McGroarty, Christel Ferguson, and Christopher Ruskis filed a First Amended Complaint (as hereinafter defined) on July 14, 2006; and

WHEREAS, David Mohney, Solvie Karlstrom, Benjamin McGroarty, Christel Ferguson, Christopher Ruskis, and Jeffrey Baskin filed a Second Amended Complaint (as hereinafter defined) on September 18, 2006; and

WHEREAS, David Mohney, Solvie Karlstrom, Benjamin McGroarty, Christel Ferguson, Christopher Ruskis, Jeffrey Baskin, Sekou Luke, Mohmammed Mahbubur Rahman, Joglul Islam, Greg Bibens, Helena Liljeblad, and William Spaugh filed a Third Amended Complaint (as hereinafter defined) on June 4, 2007; and

WHEREAS, the Third Amended Complaint asserted class claims under the New York Labor Law and collective claims under the Fair Labor Standards Act and sought recovery of, among other things, unpaid overtime wages, unpaid spread-of-hours pay, unpaid misappropriated tips, unpaid call-in pay, unpaid uniform expenses, unpaid regular wages, and attorneys' fees and costs, as well as injunctive and declaratory relief under the New York Labor Law; and

WHEREAS, Defendants denied and continue to deny all of the allegations made by Plaintiffs in the Litigation (as hereinafter defined) and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Class Counsel (as hereinafter defined) has conducted extensive investigation and prosecution of this case, including, but not limited to, interviewing dozens of putative class members and opt-in plaintiffs, reviewing thousands of documents produced by Defendants, deposing corporate representatives, reviewing deposition transcripts of Defendants' corporate employees, reviewing and analyzing payroll data, filing a motion for a preliminary injunction, preparing for a preliminary injunction hearing, and filing a motion for conditional certification under 29 U.S.C. § 216(b); and

WHEREAS, the Parties participated in mediation sessions of this matter on January 8, 2007, April 9, 2007, July 23, 2007, July 24, 2007, December 3, 2007, December 4, 2007, January 23, 2008, April 25, 2008, and July 23, 2008, which were conducted by Carol Wittenberg of JAMS; and

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiffs and the Class (as hereinafter defined); and

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever for the Class, or might result in a recovery that is less favorable to the Class, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of the Class.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1   **Arroyo Plaintiffs.** "Arroyo Plaintiffs" shall mean all plaintiffs in Arroyo, et al. v. Redeye Grill LP, et al., 06 Civ. 00381 (PAC), pending in the United States District Court for the Southern District of New York.

1.2   **Bond 45.** "Bond 45" shall mean 45th Street Hospitality Partners d/b/a Bond 45 Italian Kitchen a/k/a Bond 45 Italian Kitchen Steak & Seafood.

1.3   **Café Fiorello's.** "Café Fiorello's" shall mean Fiorello's Roman Café, Inc. d/b/a Fiorello's Roman Café a/k/a Café Fiorello's.

1.4   **Charity.** "Charity" shall mean New York Legal Assistance Group.

1.5   **Class; Class Member.** "Class" shall mean all persons who have worked as servers, runners, and/or bussers at Fireman Group Fireman Group Restaurants at any time between June 6, 2000 and April 1, 2007. A member of the Class is a "Class Member." The Class shall exclude any person who was on Defendants' payroll for fewer than 4 Pay Periods, as defined in Section 3.4(E)(1). The Class shall exclude all Arroyo Plaintiffs.

1.6   **Claims Administrator.** "Claims Administrator" shall mean Settlement Services Inc., which is the entity jointly selected by the Parties from the three bids provided by Class

Counsel to Defendants' Counsel to provide notice to the Class and administer payment of claims submitted by Class Members.

1.7 **Class Counsel.** "Class Counsel" shall mean Outten & Golden LLP.

1.8 **Corporate Defendants.** "Corporate Defendants" shall mean to Shelly's Prime Steak, Stone Crab & Oyster Bar a/k/a Shelly's New York a/k/a Shelly's New York Steakhouse and Oyster Bar; Johnmar LLC d/b/a Shelly's Prime Steak, Stone Crab & Oyster Bar; The Fireman Group Café Concepts, Inc. a/k/a The Fireman Hospitality Group; Fiorello's Roman Café, Inc. d/b/a Fiorello's Roman Café a/k/a Café Fiorello's; Cieli Partners L.P. d/b/a Trattoria Dell'Arte; Red Eye Grill, Inc. d/b/a Red Eye Grill; Red Eye Grill, L.P. d/b/a Red Eye Grill; 45th Street Hospitality Partners d/b/a Bond 45 Italian Kitchen a/k/a Bond 45 Italian Kitchen Steak & Seafood; Brooklyn Diner U.S.A., Inc. d/b/a Brooklyn Diner U.S.A.; Brooklyn Diner U.S.A., L.P. d/b/a Brooklyn Diner U.S.A.

1.9 **Court.** "Court" shall mean to the United States District Court for the Southern District of New York, the Honorable Paul A. Crotty presiding.

1.10 **Covered Period.** "Covered Period" shall mean the period from June 6, 2000 to December 1, 2007.

1.11 **Defendants.** "Defendants" shall mean Shelly's Prime Steak, Stone Crab & Oyster Bar a/k/a Shelly's New York a/k/a Shelly's New York Steakhouse and Oyster Bar; Johnmar LLC d/b/a Shelly's Prime Steak, Stone Crab & Oyster Bar; The Fireman Group Café Concepts, Inc. a/k/a The Fireman Hospitality Group; Fiorello's Roman Café, Inc. d/b/a Fiorello's Roman Café a/k/a Café Fiorello's; Cieli Partners L.P. d/b/a Trattoria Dell'Arte; Red Eye Grill, Inc. d/b/a Red Eye Grill; Red Eye Grill, L.P. d/b/a Red Eye Grill; 45th Street Hospitality Partners d/b/a Bond 45 Italian Kitchen a/k/a Bond 45 Italian Kitchen Steak & Seafood; Brooklyn Diner U.S.A., Inc. d/b/a Brooklyn Diner U.S.A.; Brooklyn Diner U.S.A., L.P. d/b/a Brooklyn Diner U.S.A.; Sheldon Fireman; John Fireman; Kevin Robinson; William Duffy; Michael Chin; Michael Welsh; Carlo Fusco; and Luca Misciasci.

1.12 **Defendants' Counsel.** "Defendants' Counsel" shall mean Shea Stokes, ALC. For purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Arch Y. Stokes, 3593 Hemphill Street, College Park, GA, 30337.

1.13 **Effective; Effective Date.** "Effective" shall mean the occurrence of all of the following, and "Effective Date" shall be the date that all of the following have occurred

    (A)    the Court has entered Judgment and ruled on the motions for awards of service payments for certain Plaintiffs pursuant to Section 3.3 and for attorneys' fees and reasonable costs pursuant to Section 3.2; and

    (B)    the Judgment and the rulings on such motions have become Final. "Final" means the later of:

(1)     The time for seeking rehearing or reconsideration and/or appellate review has expired and there is no one with standing to seek such review; or

(2)     If rehearing, reconsideration and appellate review is sought, after any and all avenues of rehearing, reconsideration and appellate review have been exhausted and no further rehearing, reconsideration or appellate review is permitted, and the time for seeking such review has expired, and the Judgment and rulings on service awards and attorneys' fees and reasonable costs have not been modified, amended or reversed in any way.

1.14    **Escrow Account.** "Escrow Account" shall mean the interest-bearing account created and controlled by the Claims Administrator.

1.15    **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.16    **Fireman Group Restaurants.** "Fireman Group Restaurants" shall mean Shelly's Prime Steak, Stone Crab & Oyster Bar a/k/a Shelly's New York a/k/a Shelly's New York Steakhouse and Oyster Bar; Johnmar LLC d/b/a Shelly's Prime Steak, Stone Crab & Oyster Bar; Fiorello's Roman Café, Inc. d/b/a Fiorello's Roman Café a/k/a Café Fiorello's; Cieli Partners L.P. d/b/a Trattoria Dell'Arte; Red Eye Grill, Inc. d/b/a Red Eye Grill; Red Eye Grill, L.P. d/b/a Red Eye Grill; 45th Street Hospitality Partners d/b/a Bond 45 Italian Kitchen a/k/a Bond 45 Italian Kitchen Steak & Seafood; Brooklyn Diner U.S.A., Inc. d/b/a Brooklyn Diner U.S.A.; and Brooklyn Diner U.S.A., L.P. d/b/a Brooklyn Diner U.S.A.

1.17    **First Amended Complaint.** "First Amended Complaint" shall mean the First Amended Complaint filed on July 14, 2006.

1.18    **Litigation.** "Litigation" shall mean Mohney, et al. v. Shelly's Prime Steak Stone Crab & Oyster Bar, et al., Case No. 06 Civ. 4270 (PAC), pending in the United States District Court for the Southern District of New York.

1.19    **Net Settlement Payment.** "Net Settlement Payment" shall mean the remainder of the Settlement Payment after deductions for payment of Plaintiffs' portion of the Claim Administrator's fees as described in Section 2.1, court-approved attorneys' fees and costs as described in Section 3.2, court-approved service payments to certain Plaintiffs as described in Section 3.3, any fees associated with investing and liquidating the Settlement Payment as described in Section 3.1(B), and any taxes incurred directly or indirectly as a result of investing the Settlement Payment.

1.20    **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

1.21    **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, inter alia, the terms and

conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.22 **Parties.** "Parties" shall mean Plaintiffs, the Class, and Defendants.

1.23 **Plaintiffs.** "Plaintiffs" shall mean David Mohney, Solvie Karlstrom, Benjamin McGroarty, Christel Ferguson, Christopher Ruskis, Jeffrey Baskin, Sekou Luke, Mohmammed Mahbubur Rahman, Joglul Islam, Greg Bibens, Helena Liljeblad and William Spaugh and shall also include any and all representatives, heirs, administrators, executors, beneficiaries, agents, attorneys, and assigns of such individuals, as applicable and without limitation.

1.24 **Red Eye Grill.** "Red Eye Grill" shall mean Red Eye Grill, Inc. d/b/a Red Eye Grill, Red Eye Grill, L.P. d/b/a Red Eye Grill.

1.25 **Retaliation Plaintiffs.** "Retaliation Plaintiffs" shall mean Kimberly Clapso, Scott Debus, Roy Forlong, Elvis Nunez, Abdur Khan, Jose Luis Roque Tavarez, John Bernard, Chantal Georges, Sekou Luke, and Michael Buoni.

1.26 **Qualified Class Member.** "Qualified Class Member" shall mean a Class Member who does not opt out and who meets the requirements regarding the execution and return of the Claim Form and Release set forth in Section 2.5.

1.27 **Second Amended Complaint.** "Second Amended Complaint" shall mean the Second Amended Complaint filed on September 18, 2006.

1.28 **Settlement Payment.** "Settlement Payment" shall mean the $3,265,000 payment, plus any interest accrued as provided in Section 3.1(B), that Defendants pay to settle the Litigation as described in Section 3.1.

1.29 **Shelly's Prime Steak, Stone Crab & Oyster Bar.** "Shelly's Prime Steak, Stone Crab & Oyster Bar" shall mean Shelly's Prime Steak, Stone Crab & Oyster Bar a/k/a Shelly's New York a/k/a Shelly's New York Steakhouse and Oyster Bar.

1.30 **Third Amended Complaint.** "Third Amended Complaint" shall mean the Third Amended Complaint filed on June 4, 2007.

1.31 **Trattoria Dell'Arte.** "Trattoria Dell'Arte" shall mean Cieli Partners L.P. d/b/a Trattoria Dell'Arte.

2. **APPROVAL AND CLASS NOTICE**

2.1 **Retention of Claims Administrator.** Within 30 calendar days after the execution of this Agreement, the Parties shall retain Settlement Services, Inc. (hereinafter, the "Claims Administrator") to administer the claims process. The Claims Administrator shall be responsible for the claims administration process and distribution to Qualified Class

Members as provided herein. The Claims Administrator shall be required to agree in writing to treat information it receives or generates as part of the claims administration process as confidential and to use such information solely for purposes of claims administration. The Parties will have equal access to the Claims Administrator, and the Claims Administrator will provide regular reports on the status of the settlement and the efforts being made to contact members of the class. Defendants agree to cooperate with the Claims Administrator and assist it in any way possible in administering the Settlement. The Parties shall pay equal amounts of the Claims Administrator's fees of $50,000. Plaintiffs' one-half portion of the Claims Administrator's fees (i.e., $25,000) shall be paid from the Settlement Payment. Defendants shall pay their one-half portion of the Claims Administrator's fees (i.e., $25,000) directly to the Claims Administrator.

**2.2**  **Preliminary Approval by the Court.** On October 31, 2008, Plaintiffs and Defendants will submit this Agreement to the Court. On November 13, 2008, Plaintiffs will submit to the Court a Motion for Order Conditionally Certifying Settlement Classes and Preliminarily Approving Class Action Settlement, a proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the draft form attached as Exhibit A, a Claim Form and Release in the draft form attached as Exhibit B, a General Release of Plaintiff and Class Representative in the draft form attached as Exhibit C, and a proposed Preliminary Approval Order. Plaintiffs will seek, and Defendants will not oppose, conditional certification of the following class:

> all persons who have worked as servers, runners, and/or bussers at Fireman Group Restaurants at any time between June 6, 2000 and April 1, 2007.

The April 1, 2007 date has been chosen based on Plaintiff's understanding that Defendants took significant remedial measure as of April 1, 2007 to stop the alleged illegal practices that formed the basis of the claims raised in the Third Amended Complaint. The Class shall exclude any person who was on Defendants' payroll for fewer than 4 Pay Periods, as defined in Section 3.4(E)(1). The Class shall exclude all Arroyo Plaintiffs. If the Court denies the Motion for Order Conditionally Certifying Settlement Classes and Preliminarily Approving Class Action Settlement, then the Litigation will resume unless the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. If a mutually agreed class settlement is not approved, the case will proceed as if no settlement had been attempted, and Defendants retain the right to contest whether this case should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiffs in this Litigation. In such a case, the Parties will negotiate and submit for Court approval a case schedule which shall, among other things, propose dates for oral arguments on Plaintiffs' Motion for Conditional Certification and a pre-motion conference on Plaintiffs' Motion for Class Certification.

**2.3    Class Notice**

    (A)    Within 15 calendar days of the date of the Order Granting Preliminary Approval, Defendants will provide the Claims Administrator with a list, in electronic form, of the names, last known addresses, telephone numbers, and social security numbers of all Class Members.

    (B)    Within 15 calendar days after receiving the information described in Section 2.3(A), the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the draft form attached as Exhibit A, and the Claim Form and Release in the draft form attached as Exhibit B, to all Class Members using each individual's last known address as recorded in Defendants' human resources records. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable and shall attempt re-mailings as described below. The Claims Administrator shall notify Class Counsel and Defendants' Counsel of any mail sent to Class Members that is returned as undeliverable after the first mailing as well as any such mail returned as undeliverable after any subsequent mailing(s) as set forth in Section 2.4.

**2.4    Class Member Opt-Out.**

    (A)    Any Class Member may request exclusion from the Class by "opting out." Class Members who choose to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the monetary portion of the Settlement ("Opt-Out Statement"). To be effective, such Opt-Out Statements must be sent via First Class United States Mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be 30 calendar days after the Claims Administrator mails the Notice. The 30 day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned to the Claims Administrator as undeliverable, in which case the 30 day period for any such Class Member will begin to run from the date of the second mailing (or, if there are more than 2 mailings, the final mailing) to such Class Member. The Claims Administrator shall not attempt more than 3 mailings of the Notice of Proposed Class Action Lawsuit and Fairness Hearing to any Class Member. The end of the "Opt-Out Period" shall be 30 calendar days after the last day on which the Claims Administrator makes a mailing. The Claims Administrator shall, within 10 calendar days after the last day on which it makes such a mailing, notify Class Counsel and Defendants' Counsel in writing by email and overnight delivery of the precise date of the end of the Opt-Out Period.

    (B)    The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on

Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator also shall, within 3 calendar days of the end of the Opt-Out Period, file with the Clerk of Court, stamped copies of any Opt-Out Statements. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation.

**2.5    Claim Form and Release.** A Class Member who does not opt out pursuant to Section 2.4 will be deemed eligible for a payment hereunder if and only if he or she timely and fully executes and returns the Claim Form and Release (in accordance with the instructions), in the form attached as Exhibit B, which will include: (1) an acknowledgement that, by signing the Claim Form and Release, he or she opts in to the case pursuant to 29 U.S.C. § 216(b) and accepts the terms of the settlement; and (2) a release of claims consistent with that set forth in Section 4.1 of this Agreement. To be effective, Class Members' Claim Form and Release must be sent to the Claims Administrator via First Class United States Mail, postage prepaid, and postmarked within 30 calendar days after the applicable dates of mailing of the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing to the respective Class Members.

**2.6    Objections to Settlement.**

(A)    Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be sent to the Claims Administrator via First-Class United States mail, postage prepaid, and be received by the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be for each Class Member 30 days after the Claims Administrator mails such Notice to such Class Member. The Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery not later than 3 calendar days after receipt thereof. The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 3 calendar days after the end of the Opt-Out Period.

(B)    An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has

filed a timely objection that complies with the procedures provided in Section 2.6(A). Any Class Member who has submitted an Opt-Out Form may not submit objections to the settlement.

(C)      The Parties may file with the Court written responses to any filed objections not later than 35 calendar days before the Fairness Hearing.

**2.7**      **Motion for Judgment and Final Approval.** Not later than 35 calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

**2.8**      **Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out pursuant to Section 2.4(A), (d) dismiss the Litigation with prejudice, and (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement.

**2.9**      **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Parties shall proceed as follows: The Litigation will resume unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(A)      The Litigation will proceed as if no settlement had been attempted. In that event, the class certified for purposes of settlement shall be decertified, and Defendants retain the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiffs in this action. In such a case, the Parties will negotiate and submit for Court approval a case schedule which shall, among other things, propose dates for oral arguments on Plaintiffs' Motion for Conditional Certification and a pre-motion conference on Plaintiffs' Motion for Class Certification.

(B)      The Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

3.    **SETTLEMENT TERMS**

3.1    **Settlement Payment.**

(A)    Defendants agree to pay $3,265,000, which shall resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any court-approved service payments to certain Plaintiffs, any fees associated with investing and liquidating the Settlement Payment, Plaintiffs' portion of the Claims Administrator's fees as described in Section 2.1, and any taxes incurred directly or indirectly by Defendants as a result of investing the Settlement Payment. Other than the employer payroll taxes as described in Section 3.5(C), Defendants' portion of the Claims Administrator's fees as described in Section 2.1, and the fees, expenses, and monetary awards of the ADR Process as described in Section 3.7, Defendants will not be required to pay more than $3,265,000 under the Agreement.

(1)    The payment schedule shall commence on September 15, 2008 and be completed by May 15, 2010.

(2)    On October 1, 2008, Defendants must sign a Confession of Judgment for the unpaid amount of the settlement that is executable if any payment is missed.

(3)    On October 1, 2008, Defendants must provide a security interest in Sheldon and/or John Fireman's personal property in the amount of $600,000 (the "Security Interest").

(4)    On July 1, 2009, Defendants must provide a Letter of Credit in the amount of $1.2 million (the "Letter of Credit").

(5)    The amount of the Settlement Payment remaining to be paid after December 2008 shall accrue interest at a 9% per annum rate (the statutory prejudgment interest rate under New York law) compounded monthly beginning on January 1, 2009.

(6)    Failure of Defendants to provide the Security Interest on October 1, 2008 or the Letter of Credit on July 1, 2009 will result in interest charges of an additional 5% per annum for all remaining payments in addition to the interest referenced in paragraph 5 above. Further, if Defendants fail to provide the Letter of Credit on July 1, 2009, Sheldon and/or John Fireman will provide an additional acceptable security interest in personal property for all remaining payments.

(B)    Defendants shall wire all payments into the Escrow Account and any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the

Settlement Payment.  Defendants shall wire in the Escrow Account the following payments on the following dates:

(1)     $200,000 on September 15, 2008

(2)     $300,000 on October 15, 2008

(3)     $350,000 on November 15, 2008

(4)     $350,000 on December 15, 2008

(5)     $100,000 on January 15, 2009

(6)     $100,000 on February 15, 2009

(7)     $100,000 on March 15, 2009

(8)     $100,000 on April 15, 2009

(9)     $100,000 on May 15, 2009

(10)    $100,000 on June 15, 2009

(11)    $100,000 on July 15, 2009

(12)    $100,000 on August 15, 2009

(13)    $100,000 on September 15, 2009

(14)    $100,000 on October 15, 2009

(15)    $150,000 on November 15, 2009

(16)    $200,000 on December 15, 2009

(17)    $100,000 on January 15, 2010

(18)    $100,000 on February 15, 2010

(19)    $150,000 on March 15, 2010

(20)    $150,000 on April 15, 2010

(21)    $215,000 on May 15, 2010

(C)     If payments to Class Members as described in Sections 3.1(D), (E), and (F) and 3.4 are not cashed within 90 days of the check date, the checks will be null and void and the money will remain in the Escrow Account.  In the event that there is

more than $20,000 in the Escrow Account 90 days after the payments described in Sections 3.1(D), (E), and (F), and 3.4 have been distributed, the Claims Administrator shall redistribute the money among Qualified Class Members in pro-rata payments based on the formula described in Section 3.4(D)(2). In the event that there is less than $20,000 in the Escrow Account 90 days after the payments described in Sections 3.1(D)(3), 3.1 (E)(3), and 3.4 have been distributed, the money will be donated to Charity. There will be no reversion to Defendants.

(D) Within 5 days of the Effective Date, the Claims Administrator will distribute the money in the Escrow Account by making the following payments:

  (1) Paying Class Counsel one-third of the money in the Escrow Account, which shall be applied towards an award of attorneys' fees as described in Section 3.2(A).

  (2) Reimbursing Class Counsel all costs and expenses approved by the Court as described in Section 3.2(A).

  (3) Paying the Claims Administrator one-half of the Plaintiffs' portion of the Claim Administrator's fees (i.e., $12,500) as described in Section 2.1.

  (4) Paying the amounts described in Section 3.3.

  (5) Paying Class Members the first of their three payments as described in Section 3.4.

(E) On September 30, 2009, the Claims Administrator will distribute the money in the Escrow Account by making the following payments:

  (1) Paying Class Counsel one-third of the money in the Escrow Account, which shall be applied towards an award of attorneys' fees as described in Section 3.2(A).

  (2) Paying any additional costs, separate and apart from the costs referenced in Section 3.2(A), incurred by Class Counsel and approved by the Court.

  (3) Paying the Claims Administrator the remainder of the Plaintiffs' portion of the Claim Administrator's fees as described in Section 2.1.

  (4) Paying Class Members the second of their three payments as described in Section 3.4.

(F) On May 30, 2010, the Claims Administrator will distribute the money in the Escrow Account by making the following payments:

- 13-

(1)     Paying Class Counsel one-third of the money in the Escrow Account, which shall be applied towards an award of attorneys' fees as described in Section 3.2(A).

(2)     Paying any additional costs, separate and apart from the costs referenced in Section 3.2(A), incurred by Class Counsel and approved by the Court.

(3)     Paying Class Members the third of their three payments as described in Section 3.4.

## 3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.

(A)     At the Fairness Hearing, Class Counsel shall petition the Court for no more than 33% of the Settlement Payment as an award of attorneys' fees. In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the Settlement Payment, which shall not exceed $50,000. These costs and expenses are exclusive of Plaintiffs' portion of the Claims Administrator's fees as described in Section 2.1. Defendants will not oppose such a fee and cost application. Defendants shall have no additional liability for fees and costs, including without limitation, administrative costs, expert fees and costs, or attorneys' fees and costs, except for the employer payroll taxes as described in Section 3.5(C), one-half of the fees and expenses of the Claims Administrator fees as described in Section 2.1, and any fees, expenses, and monetary awards of the ADR Process as described in Section 3.7.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

## 3.3    Payments To Certain Plaintiffs. 

At the Fairness Hearing, Plaintiffs David Mohney, Solvie Karlstrom, Benjamin McGroarty, Christel Ferguson, Christopher Ruskis, Jeffrey Baskin, Sekou Luke, Mohmammed Mahbubur Rahman, Joglul Islam, Greg Bibens, Helena Liljeblad, William Spaugh, Roy Forlong, and Chantal Georges will apply to the Court to receive no more than $6,000 each from the Settlement Payment for services rendered to the Class. Defendants will not oppose such applications. The service payments and the requirements for obtaining such payments are separate and apart from, and in addition to, other recovery to which these Plaintiffs might be entitled, and other requirements for obtaining such recovery, under other provisions of this Agreement. The substance of the above-referenced Plaintiffs' application for service awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service payments shall not terminate

this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

**3.4**   **Distribution to Class Members.**

    (A)    A Class Member who does not opt out pursuant to Section 2.4(A)  will be deemed eligible for a payment hereunder if and only if he or she timely and fully executes and returns the Claim Form and Release (in accordance with the instructions), including the release and opt-in acknowledgement in accordance with section 2.5 above.  Regardless of whether he or she timely and fully executes and returns the Claim Form and Release, any Class Member who does not opt out pursuant to Section 2.4 is subject to the releases set forth in Section 4.1(A).

    (B)    Class Members who meet the requirements of Section 2.5 regarding the execution and return of the Claim Form and Release shall be referred to herein as "Qualified Class Members."

    (C)    In the event that a Class Member fails to submit the requisite Claim Form and Release within the time period set forth in the Claim Form and Release, the Class Member shall forfeit any right to distribution from the Settlement Payment.

    (D)    A Qualified Class Member's proportionate share of the Settlement Payment less any amounts approved by the Court under Sections 2.1, 3.2, and 3.3 ("Net Settlement Payment") shall be determined by the Claims Administrator as follows:

        (1)    Each Qualified Class Member's proportionate share of the Net Settlement Payment shall be determined according to the formula set forth in sub-paragraph 2 below as calculated by the Claims Administrator.  (In agreeing to this formula, which implements the Parties' compromise as to the resolution of claims, Defendants do not admit that any Class Member's claim has merit).

        (2)    *Points* – Each Qualified Class Member shall be assigned Points as follows:

            (a)    For each Pay Period in which the Qualified Class Member held a Covered Position during the Covered Period, the Qualified Class Member earns 5 points.

            (b)    For each Pay Period in which the Qualified Class Member held a Covered Position during the Covered Period at Shelly's Prime Steak, Stone Crab & Oyster Bar, Fiorello's Roman Café, Inc., Trattoria Dell'Arte, Red Eye Grill, Inc., and Bond 45, the Qualified Class Member earns 1 point.

- 15-

(c)     For each Pay Period from September 29, 2003 through the end of the Covered Period in which the Qualified Class Member held a Covered Position, the Qualified Class Member earns an additional 4 points.

(d)     For each Pay Period from September 29, 2003 through the end of the Covered Period, in which the Qualified Class Member who filed a Consent to be a party plaintiff before September 29, 2006 (the list of such individuals is attached as Exhibit E), held a covered position, the Qualified Class Member earns an additional 2 points.

### *Calculation*

(e)     Add all Points for all Qualified Class Members together to obtain the "Total Class Member Denominator."

(f)     Divide the number of Points for each Qualified Class Member by the Total Class Member Denominator to obtain each Qualified Class Member's "Portion of the Net Settlement Payment."

(g)     Multiply each Qualified Class Member's Portion of the Net Settlement Payment by the Net Settlement Payment to determine each Qualified Class Member's "Settlement Award."

(E)     The following definitions shall apply to the terms described in the formula set forth in Section 3.4.

(1)     "Pay Period" shall mean any weekly period in which an employee was on Defendants' payroll and earned income.

(2)     "Covered Period" is the period from June 6, 2000 through December 1, 2007.

(3)     "Covered Position" refers to the positions of busser, server, and runner at Fireman Group Restaurants. Any Class Member who worked as a busser, server, or runner at a Fireman Group Restaurant is deemed to have worked in a Covered Position.

(F)     Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5.

(G)     Within 30 days after the date of the Order Granting Final Approval, Defendants will provide the Claims Administrator with a list, in electronic form, of the names, last known addresses, social security numbers, positions, and dates of employment

of all Qualified Class Members.  With the exception of addresses, this data, and any other data provided by Defendants to the Claims Administrator pursuant to this Agreement, shall be conclusively presumed to be accurate.

(H)   The Claims Administrator will make three payments to Class Members.  The Claims Administrator shall mail to all Qualified Class Members their first payment of their proportionate share within 5 days of the Effective Date.  The Claims Administrator shall mail to all Qualified Class Members their second payment of their proportionate share on September 30, 2009.  The Claims Administrator shall mail to all Qualified Class Members their third payment of their proportionate share on May 30, 2010.  The Claims Administrator shall use reasonable efforts to make an additional mailing to Qualified Class Members whose checks are returned because of incorrect addresses.  Such efforts shall include using social security numbers to obtain better address information and, for Qualified Class Members whose payment is greater than $100, attempting to call such Qualified Class Members.  Any additional efforts undertaken shall be in the sole discretion of the Claims Administrator.

**3.5**   **Taxability of Settlement Payments.**

(A)   For tax purposes, 50% of payments to Qualified Class Members pursuant to Section 3.4 shall be treated as back wages and 50% of such payments shall be treated as liquidated damages and interest.

(B)   Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments treated as liquidated damages and interest pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099.  Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.  Any service payments pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)   Defendants shall pay all state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A).

(D)   Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that each individual Class Member will be solely

responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)) and will indemnify, defend and hold Defendants and the Claims Administrator harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on Defendants or the Claims Administrator as a result of a Class Member's failure to timely pay such taxes. Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

**3.6   Injunctive Relief**

(A)   The Parties agree that the relief ordered by Judge Crotty in this Litigation in the Consent Order dated October 2, 2006, attached hereto as Exhibit F, will remain in effect for a period of four years from the date that the Parties execute this Agreement and will benefit all workers at all Fireman Group Restaurants. The injunctive relief shall be subject to the approval and continuing jurisdiction of the United States District Court for the Southern District of New York during the four year period.

(B)   Corporate Defendants agree to the following relief for a period of four years from the date that the Parties execute this Agreement. This relief shall be subject to the approval and continuing jurisdiction of the United States District Court for the Southern District of New York during the four year period.

(1)   Corporate Defendants will not require that workers at Fireman Group Restaurants share tips with Zone Maitre d's, floor managers, or anybody with supervisory authority, and to prohibit Zone Maitre d's, floor managers, or anybody with supervisory authority from sharing in a tip pool;

(2)   Corporate Defendants will not require servers, bussers, or runners to provide their own uniforms other than black pants, black shoes and socks, and a black or white shirt. To the extent that any further uniform elements are required by the Corporate Defendants, such as vest, special-colored tie, cap, jacket, or apron, those items will be provided and laundered by the Corporate Defendants. Corporate Defendants will not require servers, bussers, or runners to purchase their work attire from any designated supplier or suppliers. If Corporate Defendants at any time require servers, busssers, or runners to wear tuxedo pants, such pants will be provided and laundered by the Corporate Defendants.

(3)   At Fireman Group Restaurants that currently do not deduct credit card fees, Corporate Defendants will not deduct such fees until at least the date of the Order Granting Final Approval.

(4)   Corporate Defendants will comply with the law with respect to call-in pay, spread-of-hours pay, break requirements, and deductions. Corporate Defendants will not ask Fireman Group workers to pay the bills of customers who leave without paying their bills. Corporate Defendants will comply with the wage and hour laws with respect to keeping accurate records of all hours worked by each employee, and, if necessary, Corporate Defendants will create and enforce reasonable policies for that purpose;

(5)   Corporate Defendants will not retaliate against workers at Fireman Group Restaurants for their participation in the Litigation or this settlement, or for complaining about the types of issues raised in the Litigation;

(6)   Corporate Defendants agree to have in place, and notify all employees of a procedure that encourages employees to complain about any perceived discrimination, harassment, wage issues, or other human resources issues without retaliation. Such a procedure will have alternate reporting channels, including to the Managing Director or General Manager at each restaurant, the Vice President of Operations, the Senior Vice President of operations for the Fireman Group Café Concepts, Inc., or a human resources professional. Defendants agree to keep employees' complaints confidential to the extent possible. Defendants agree to implement a Concern Procedure, which is attached hereto as Exhibit G. Defendants reserve the right to make changes to the Concern Procedure attached hereto as Exhibit G.

(6)   In addition to the Concern Procedure, at least once per quarter, the General Manager of each restaurant will select an employee who does not work in a management position (hereinafter, "designated employee") with whom other employees may discuss any matters of interest to the employee or other employees regarding operations at the restaurant. Notice of the name of the designated employee who has been selected for that quarter will be given at least one week in advance to all employees in the restaurant, and employees will be encouraged to bring any issues they may have to the designated employee so that the issues may be raised with the General Manager. The General Manager will make every effort to choose designated employees from various employment classifications so that each classification is represented throughout the year. Participation by the General Manager in the discussion with the designated employee will not constitute a promise by the General Manager or by management to take action on any issue discussed, though action may be taken by the General Manager or by management when appropriate, in the sole discretion of the General Manager and management.

(7)   Corporate Defendants agree to provide all supervisory employees at Fireman Group Restaurants, and all employees at Fireman Group

- 19-

restaurants who are involved in the timekeeping and/or payroll process, with training that will include training on the Fair Labor Standards Act and the New York Labor Law.

3.7    **Alternative Dispute Resolution Process.**  Within 90 calendar days of the date of the Order Granting Preliminary Approval, the Parties will engage in an alternative dispute resolution process ("ADR Process") in an effort to resolve each retaliation and/or tort claim in the Third Amended Complaint filed by Kimberly Clapso, Scott Debus, Roy Forlong, Elvis Nunez, Abdur Khan, Jose Luis Roque Tavarez, John Bernard, Chantal Georges, Sekou Luke, and Michael Buoni ("Retaliation Claims").  Carol Wittenberg of JAMS will preside over the ADR Process.  With the help of Carol Wittenberg, the parties will create the ADR Process to which the Retaliation Claims will be submitted.  The parties agree that, for the Retaliation Claims of Kim Clapso, Elvis Nunez, John Bernard and Sekou Luke, the process will consist solely of a 1-page written submission along with any supporting exhibits.  For the Retaliation Claims of Scott Debus, Roy Forlong, Abdur Khan, Jose Luis Roque Tavarez, Chantal Georges, and Michael Buoni, the parties will submit 3-page written submissions along with any supporting exhibits and participate in a 30-minute telephonic hearing before Carole Wittenberg.  For any Retaliation Claim whose emotional distress damages are supported by medical records, the Parties will be allowed to submit one written submission of up to 10 pages along with any supporting exhibits.  Plaintiffs agree to discontinue the Retaliation Claims without prejudice to re-filing them if they are not resolved in the ADR Process.  Defendants agree that the statutes of limitations for the Retaliation Claims were tolled at the time they were first alleged in the Litigation and remain tolled throughout the ADR Process.  Ms. Wittenberg will be required to follow the law in awarding damages.  The parties agree that the monies paid in the settlement of the NLRB claims filed by Michael Buoni, Roy Forlong, Abdur Khan, and Jose Luis Roque Tavarez may be considered by Carol Wittenberg as a potential offset to any Retaliation Claims handled under this section.  All decisions made by Carol Wittenberg shall be final and binding.

4.    **RELEASE**

4.1    **Release of Claims.**

(A)    By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement, Plaintiffs and each individual Class Member who does not timely opt out pursuant to Section 2.4 forever and fully release Defendants from all New York Labor Law claims asserted in the Third Amended Complaint from December 1, 2007 except for the Retaliation Claims of Kimberly Clapso, Scott Debus, Roy Forlong, Elvis Nunez, Abdur Khan, Jose Luis Roque Tavarez, John Bernard, Chantal Georges, Sekou Luke, and Michael Buoni as described in Section 3.7 ("NYLL Released Claims").  The NYLL Released Claims include all New York Labor Law claims for unpaid overtime wages, unpaid spread-of-hours pay, misappropriated tips,

- 20-

unpaid call-in pay, unpaid uniform expenses, unpaid regular wages, interest on such claims, and attorneys' fees and costs related to such claims.

(B)     In addition to the NYLL Released Claims described in Section 4.1(A), by signing the Claim Form and Release, all Qualified Class Members forever and fully release Defendants from all Fair Labor Standards Act asserted in the Third Amended Complaint through December 1, 2007 except for the Retaliation Claims of Kimberly Clapso, Scott Debus, Roy Forlong, Elvis Nunez, Abdur Khan, Jose Luis Roque Tavarez, John Bernard, Chantal Georges, Sekou Luke, and Michael Buoni as described in Section 3.7 ("FLSA Released Claims"). The FLSA Released Claims include all Fair Labor Standards Act claims for unpaid minimum wages, unpaid overtime wages, liquidated damages, and attorneys' fees and costs related to such claims.

(C)     In addition to the NYLL Released Claims and the FLSA Released Claims, by signing the General Release of Plaintiff and Class Representative, Plaintiffs irrevocably and unconditionally release, remit, acquit and discharge all Defendants, and their past and present subsidiaries, parent corporations, affiliates, owners, partners, joint venturers, officers, directors, insurers, agents, present and former employees, attorneys, successors, and assigns (all of whom are hereinafter collectively referred to as "Releasees"), jointly and individually, from any and all claims, known or unknown, which they, their heirs, successors or assigns have or may have against them, except for the Retaliation Claims as described in Section 3.7 of this Agreement. Without limiting the generality of the foregoing in any way, Plaintiffs hereby release Releasees from any and all claims, liability and causes of action arising out of their employment with any of the Defendants, including any claims that were raised or could have been raised in this Litigation. This Release relates to any claim of Plaintiffs whatsoever and includes any and all liability which Releasees have or may have to Plaintiffs whether denominated claims, demands, causes of action, obligations, damages, liquidated damages, minimum wages, back pay, front pay, compensatory damages, punitive damages, damages for pain and suffering, costs, attorneys' fees or liabilities, which exist as of this time, except for the Retaliation Claims as described in Paragraph 3.7 of this Agreement.

4.2     **Release of Fees and Costs for Settled Matters.** Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs and the Class. Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals.

4.3     **No Assignment.** Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or

purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

4.4   **Non-Admission of Liability.**  By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement.  The Parties understand and agree that this Agreement and all Exhibits thereto are settlement documents and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

4.5   **Confidentiality.**  Plaintiffs agree, for themselves, their agents, their attorneys, and their attorneys' agents that they will not disclose or publish, directly or indirectly, in writing, on the internet or the world-wide-web or otherwise to any person or entity, the amount, terms, or conditions of this Agreement, except as unavoidable in the course of executing and obtaining Court approval of this Agreement and in discharging their duties as Class Representatives.  If asked about any aspect of any claims in this Litigation by anybody other than Class Members, the Plaintiffs will state only that "the matter has been resolved."

Notwithstanding the foregoing, Plaintiffs may, as required by law, disclose to agents of the Internal Revenue Service and the New York Department of Revenue, the terms and amount of this settlement, and additional relevant information that said authorities require them to produce in connection with filing, amending or auditing their federal, state or local income tax returns.  Plaintiffs may also disclose the amount, terms or conditions of this Agreement to their immediate family, tax advisors, accountants, and attorneys. Plaintiffs agree to instruct their immediate family, tax advisors, accountants, attorneys and other agents and anyone else to whom this information is disclosed not to disclose any information covered by this Section and they agree to seek in good faith to have such persons keep the information confidential.

Plaintiffs agree that if they, or their attorneys, or agents of their attorneys, or any agent, representative or relation should receive any request for information covered by this Section, including without limitation a subpoena or court order, other than a request from their own attorney or accountant or a taxing authority, they will have their attorneys provide Defendants' attorneys written notice of the request (including a copy of the request) within ten (10) business days of receipt of the request and will not comply with any such request for at least fifteen (15) days, or the maximum time period allowed by law, whichever is longer, after giving written notice to Defendants' counsel in order to give Defendants the opportunity to intervene, move to quash or otherwise respond to the request.

**5.    MISCELLANEOUS**

**5.1    Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2    Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.3    Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.4    Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

**5.5    Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.6    Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.7    Blue Penciling.** Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.8 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.9 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

5.10 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.11 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendant had signed the same instrument.

5.12 **Facsimile Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile to counsel for the other party. Any signature made and transmitted by facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile.

DATED: October ___, 2008

Shelly's Prime Steak, Stone Crab & Oyster Bar a/k/a Shelly's New York a/k/a Shelly's New York Steakhouse and Oyster Bar

By: _____

Its: _____

DATED:  October  ___, 2008  Johnmar LLC d/b/a Shelly's Prime Steak, Stone Crab & Oyster Bar

By: _____

Its: _____

DATED:  July  ___, 2008  The Fireman Group Café Concepts, Inc. a/k/a  The Fireman Hospitality Group

By: _____

Its: _____

DATED October  ___, 2008  Fiorello's Roman Café, Inc. d/b/a Fiorello's Roman Café a/k/a Café Fiorello's

By: _____

Its: _____

DATED:  October  ___, 2008  Cieli Partners L.P. d/b/a Trattoria Dell'Arte

By: _____

Its: _____

DATED:  October  ___, 2008  Red Eye Grill, Inc. d/b/a Red Eye Grill

By: _____

Its: _____

DATED: October ___, 2008     Red Eye Grill, L.P. d/b/a Red Eye Grill

By: _____

Its: _____

DATED: October ___, 2008     45th Street Hospitality Partners d/b/a Bond 45 Italian
Kitchen a/k/a Bond 45 Italian Kitchen Steak & Seafood

By: _____

Its: _____

DATED: October ___, 2008     Brooklyn Diner U.S.A., Inc. d/b/a Brooklyn Diner U.S.A.

By: _____

Its: _____

DATED: October ___, 2008     Brooklyn Diner U.S.A., L.P. d/b/a Brooklyn Diner U.S.A.

By: _____

Its: _____

DATED: October ___, 2008     Sheldon Fireman

_____

DATED: October ___, 2008     John Fireman

_____

DATED: October ___, 2008     Kevin Robinson

_____

DATED: October ___, 2008      William Duffy

_____

DATED: October ___, 2008      Michael Chin

_____

DATED: October ___, 2008      Michael Welsh

_____

DATED: October ___, 2008      Carlo Fusco

_____

DATED: October ___, 2008      Luca Misciasci

_____

DATED: October ___, 2008      OUTTEN & GOLDEN LLP as attorneys for Plaintiffs and the Class

By: _____
       Justin M. Swartz

DATED: October ___, 2008      David Mohney

_____

DATED: October ___, 2008      Solvie Karlstrom

_____

DATED: October 9, 2008      Benjamin McGroarty

_____

DATED: October ___, 2008      Christel Ferguson

_____

DATED: October ___, 2008                      William Duffy

_____

DATED: October ___, 2008                      Michael Chin

_____

DATED: October ___, 2008                      Michael Welsh

_____

DATED: October ___, 2008                      Carlo Fusco

_____

DATED: October ___, 2008                      Luca Misciasci

_____

DATED: October 16, 2008                       OUTTEN & GOLDEN LLP as attorneys for Plaintiffs and
                                              the Class

                                              By: _____
                                                  Justin M. Swartz

DATED: October 7, 2008                        David Mohney

                                              _____

DATED: October 3, 2008                        Solvie Karlstrom

                                              _____

DATED: October ___, 2008                      Benjamin McGroarty

                                              _____

DATED: October 9, 2008                        Christel Ferguson

                                              _____

DATED:  October __, 2008          Christopher Ruskis

_____

DATED:  October 3, 2008           Jeffrey Baskin

_____

DATED:  October 17 2008           Sekou Luke

_____

DATED:  October 10, 2008          Mohammed Mahbubur Rahman

MD MAHBUBUR RAHMAN

DATED:  October 14, 2008          Joglul Islam

10-14-2008    Joglul Islam.
_____

DATED:  October 14, 2008          Greg Bibens

_____

DATED:  October 14, 2008          Helena Liljeblad

_____

DATED:  October __, 2008          William Spaugh

_____

DATED:  October  __, 2008          Christopher Ruskis

 

DATED:  October  __, 2008          Jeffrey Baskin

 

DATED:  October  __, 2008          Sekou Luke

 

DATED:  October  __, 2008          Mohammed Mahbubur Rahman

 

DATED:  October  __, 2008          Joglul Islam

 

DATED:  October  __, 2008          Greg Bibens

 

DATED:  October  __, 2008          Helena Liljeblad

 

DATED:  October 9, 2008            William Spaugh

- 28 -

DATED: October 10, 2008              Christopher Raskis

DATED: October __, 2008              Jeffrey Baskin

DATED: October __, 2008              Sekou Luke

DATED: October __, 2008              Mohammed Mahbubur Rahman

DATED: October __, 2008              Joglul Islam

DATED: October __, 2008              Greg Bibens

DATED: October __, 2008              Helena Liljeblad

DATED: October __, 2008              William Spaugh