**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
Tara Lai Quinlan (TQ 0717)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID MOHNEY, et al., <br><br> Plaintiffs, <br><br> -against- <br><br> SHELLY'S PRIME STEAK, STONE CRAB & OYSTER BAR a/k/a SHELLY'S NEW YORK a/k/a SHELLY'S NEW YORK STEAKHOUSE AND OYSTER BAR, et al., <br><br> Defendants. | 06 Civ. 4270 (PAC) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

I.  INTRODUCTION ..................................................................................................... 1

II. CLASS COUNSEL IS ENTITLED TO A REASONABLE FEE OF THIRTY-THREE
PERCENT OF THE SETTLEMENT FUND. ................................................................ 2

    A.  The Percentage Method is The Preferred Method in the Second Circuit When
Awarding Attorneys' Fees in a Common Fund Case. .................................................. 3

    B.  A Review of the Relevant Factors Supports Class Counsels' Fee Application. ............. 6

      1.  Class Counsel's Time and Labor ................................................................. 7

      2.  Magnitude and Complexity of the Litigation ................................................. 9

      3.  Risk of Litigation ..................................................................................... 111

      4. Quality of Representation .......................................................................... 12

      5.  Fee in Relation to the Settlement .............................................................. 155

      6.  Public Policy Considerations ..................................................................... 16

III.  THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS
COUNSEL OF THIRTY-THREE PERCENT OF THE SETTLEMENT FUND ....................... 17

IV.  CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE
SETTLEMENT AGREEMENT. ..................................................................................... 19

V.  ALL BUT ONE CLASS MEMBER WITHDREW THEIR OBJECTIONS TO CLASS
COUNSEL'S FEE REQUEST ....................................................................................... 20

VI.  CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*A.H. Phillips v. Walling,*
  324 U.S. 490 (1945)..................................................................................16

*In re American Bank Note Holographics,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................4

*Ansoumana v. Gristede's Operating Corp,*
  201 F.R.D. 81 (S.D.N.Y. 2001) .........................................................10, 14

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
  No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101 (S.D.N.Y. Sept. 28, 2006) ..........................3

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,*
  493 F.3d 110 (2d Cir. 2007) .......................................................................5

*In re Avon Products, Inc. Sec. Litigation,*
  No. 89 Civ. 6216, 1992 U.S. Dist. LEXIS 17072 (S.D.N.Y. Nov. 5, 1992) ..........................16

*Banyai v. Mazur,*
  No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007)..........................6

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
  450 U.S. 728 (1981)....................................................................................9

*In re Boesky,*
  888 F. Supp. 551 .......................................................................................18

*Brunson v. The City of New York,* Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 U.S. Dist.
  LEXIS 18434, (S.D.N.Y. Dec. 21, 2000) ...............................................11

*Cohen v. Apache Corp.,*
  No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211 (S.D.N.Y. Apr. 21, 1993) ..........................16

*In re Continental Ill. Sec. Litig.,*
  962 F.2d 566 (7th Cir. 1992) ..................................................................4,5

*Damassia v. Duane Reade, Inc.,*
  250 F.R.D. 152 (S.D.N.Y. 2008) ..............................................................14

*Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) .....................................................................11

*Dolgow v. Anderson*,
   43 F.R.D. 472 (E.D.N.Y. 1968), *reversed and remanded on other grounds*, 438 F.2d
   825 (2d Cir. 1970)................................................................................................17

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007).........................6

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................ passim

*In re Gilat Satellite Networks, Ltd.*,
   No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007).........................15

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008).........................14

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................6, 13

*Goldberger v. Integrated Res. Inc.*,
   209 F.3d 43 (2d Cir. 2000) ............................................................................ passim

*Grace v. Ludwig*,
   484 F.2d 1262 (2d Cir. 1973) ..............................................................................17

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) .................16, 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)..................................................................15, 20

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964)............................................................................................17

*Karpus v. Borelli*
   (*In re Interpublic Sec. Litig.*), No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429
   (S.D.N.Y. Oct. 26, 2004) .......................................................................................5

*In re Lloyd's Am. Trust Fund Litig.*,
   96 Civ. 1262, 2002 U.S Dist. LEXIS 22663........................................................18

*Maley v. Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..........................................................4, 16, 18

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993)........................................................................20

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................3, 18

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...............................................................................................17

*In re Polaroid ERISA Litig.*,
    No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983 (S.D.N.Y. July 19, 2007)........4, 5

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996).............................................................................9

*Rabin v. Concord Assets Group, Inc.*,
    No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991).........18

*In re Ramp Corp. Sec. Litigation*,
    No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213 (S.D.N.Y. Jan. 4, 2008)..........4, 5, 6

*In re RJR Nabisco, Inc. Sec. Litig.*,
    No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702  (S.D.N.Y. Aug. 24,1992) .........18

*Rosenburg v. I.B.M.*,
    No. 06 Civ. 00430, 2007 U.S. Dist. LEXIS 53138 (N.D. Cal. July 12, 2007) .......14

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d. Cir. 1999) ............................................................................5, 18

*Stefaniak v. HSBC Bank USA, N.A.*,
    No. 05 Civ. 720 S, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) .......14, 15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................3, 4

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)..............................................................4, 5, 16

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ..................................................................................4

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007).......13, 16

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) .......14

*Varljen v. H.J. Meyers & Co.*,
    No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205 (S.D.N.Y. Nov. 6, 2000) ............6

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) .............................
    ....................................................................................................................................4, 5, 14, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................................4, 5

*In re Warnaco Group, Inc. Sec. Litig.*,
    No. 00 Civ. 6266, 2004 U.S. Dist. LEXIS 13126 (S.D.N.Y. July 13, 2004).........................16

I.    **INTRODUCTION**

In connection with the Motion for Certification of a Settlement Class, Final Approval of the Class Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"), which was filed on March 18, 2009 in the above-captioned action,[1] Court-appointed Class Counsel, the law firm of Outten & Golden LLP ("Class Counsel" or "O&G"), respectfully move this Court for an award of attorneys' fees in the amount of thirty-three percent of the Settlement Fund (less $58,000) and reimbursement of the $50,000 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting the claims in this action.

Over the past 2 years and 9 months, Class Counsel has spent 4,323 attorney and paralegal hours prosecuting this case.  (Swartz Dec. ¶ 6.)  Multiplied by each attorney's and paralegal's hourly rate, this results in a lodestar amount of $1,511,160.50.  (Swartz Dec. ¶ 9.)  Class Counsel's request for 33% of the fund less $58,000 is approximately 69% of their lodestar, far less than what Courts have awarded in similar cases.  (Swartz Dec. ¶ 9.)  Courts routinely award lawyers two to three times their actual lodestar amounts in class action settlements.

Class Counsel's efforts to date have been without compensation of any kind, and the fee has been wholly contingent upon the result achieved.  (Swartz Dec. ¶ 11.)  For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees and expense reimbursements are fair and reasonable under the applicable legal standards, and, in light of the contingency risk undertaken and the result achieved, should be awarded by the Court.

---

[1] For a detailed account of the factual and procedural background of this case, including settlement negotiations and administration, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval and the supporting Declaration of Justin M. Swartz.

1

## II.    CLASS COUNSEL IS ENTITLED TO A REASONABLE FEE OF THIRTY-THREE PERCENT OF THE SETTLEMENT FUND.

Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages on behalf of the Class.  The Settlement Agreement, preliminarily approved by the Court, provides that "Class Counsel shall petition the Court for no more than 33% of the Settlement Payment as an award of attorneys' fees … [and] seek reimbursement of reasonable litigation costs and expenses . . . , which shall not exceed $50,000." (Ex. C[2] (Stlmt. Agmt.) ¶ 3.2(A).)  In addition, the Court-approved Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") that was sent to Class Members stated the following:

> Class Counsel will apply to the Court for attorneys' fees in the amount of 33% of the settlement fund, which amounts to approximately $1,088,333. . . . Class Counsel will also apply for an amount not to exceed $50,000 to reimburse Class Counsel for actual out-of-pocket expenses paid by Class Counsel to litigate this case.

(Ex. G (Notice) at ¶ 6(a).)  Although the Settlement Agreement provides that Class Counsel is entitled to thirty-three percent of the Settlement Fund before costs are deducted, (Ex. C (Stlmt. Agmt) ¶¶ 3.2(A), 3.1(D)(1), 3.1(E)(1), 3.1(F)(1)), they are seeking thirty-three percent of the Settlement Fund *after* costs are deducted, less $58,000.  (Swartz Dec. ¶¶ 9, 81.)  Class Counsel estimates that there will be approximately $3,349,003.83 in the interest-bearing escrow account after Defendants have made all payments, thus, Class Counsel requests approximately $1,047,171.26.[3]  (Swartz  Dec. ¶ 81.)  Class Counsel's request is reasonable and well within the range approved by courts in similar litigations.

---

[2] All exhibits are attached to the Declaration of Justin M. Swartz in support of this motion.

[3] As of March 13, 2009, there was $1,537,291.33 in the interest-bearing escrow account. (Swartz Dec. ¶ 81.)  From April 15, 2009 until May 15, 2010, Defendants will deposit $1,765,000 plus approximately $96,712.50 in interest.  (Ex. C (Stlmt. Agmt.) ¶ 3.1(B)(8)-(21);

A. **The Percentage Method is The Preferred Method in the Second Circuit When Awarding Attorneys' Fees in a Common Fund Case.**

In class action lawsuits for the recovery of wages, "public policy favors [a common fund] award" of attorneys' fees. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys must be adequately compensated for their efforts. If not, such abuses would go without remedy because attorneys would be unwilling to take on such risky contingency matters. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method – in class settlement funds like this one, courts in this Circuit prefer to award fees as a percentage of the fund. *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (collecting cases). Indeed, in 2006, a district court in the Second Circuit noted that "[a]lthough the Second Circuit has vested the lower circuits with the option of using either the percentage or lodestar methods, every significant Southern District opinion facing the issue since *Goldberger* has embraced the percentage approach, without much case-specific analysis of the choice." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101, at *24 (S.D.N.Y. Sept. 28, 2006) (citations omitted).

---

Swartz Dec. ¶ 81.)

Similarly, a majority of other circuits have approved and favored the percentage method in common fund cases. *See Maley v. Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

There are many reasons why courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it incentivizes attorneys to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Goldberger*, 209 F.3d at 47-50; *In re Ramp Corp. Sec. Litigation*, No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213, at *8 (S.D.N.Y. Jan. 4, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983, at *6 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *24 (S.D.N.Y. June 22, 2007).

It is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Strougo*, 258 F. Supp. 2d at 262 (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."); *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services

in the market rather than being paid by court order.") (citing *In re Continental Ill. Sec. Litig.*, 962

F.2d 566, 568 (7th Cir. 1992). This is consistent with the Second Circuit's decision in *Arbor*

*Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 111-12 (2d Cir.

2007), where the Court held that a "presumptively reasonable fee" takes into account what a

"reasonable, paying client" would pay. While not binding here because it does not address a

class action common fund fee request, *Arbor Hill*'s efficient market approach supports using the

percentage of the fund method, which is consistent with the way that these Class Members

would pay their attorneys if they hired them individually. *See In re Sumitomo Copper Litig.*, 74

F. Supp. 2d at 397.

 Second, the percentage method promotes early resolution. As the Second Circuit

recently stated, it "provides a powerful incentive for the efficient prosecution and early

resolution of the litigation." *Wal-Mart Stores, Inc.*, 396 F.3d at 121; *see also In re Ramp Cor.*

*Sec. Litigation*, No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213, at *8 (S.D.N.Y. Jan. 4, 2008); *In*

*re Polaroid ERISA Litig.*, 2007 U.S. Dist. LEXIS 51983, at *6; *Velez*, 2007 U.S. Dist. LEXIS

46223, at *24. The percentage method decreases the incentive for plaintiffs' lawyers to run up

the number of billable hours, which the courts consider to be one of the most significant

downsides to adopting the lodestar method. *Karpus v. Borelli (In re Interpublic Sec. Litig.*), No.

03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429, at *32 (S.D.N.Y. Oct. 26, 2004).

 Third, the percentage method preserves judicial resources because it "relieves the court

of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions."

*Karpus*, 2004 U.S. Dist. LEXIS 21429, at *32 (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456,

461 n.4 (2d Cir. 1999)). As the Second Circuit noted in *Goldberger*, the "primary source of

dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge,

compelling district courts to engage in a gimlet-eyed review of line-item fee audits."  209 F.3d at 48-49; s*ee also In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213, at *8 n.2 (S.D.N.Y. Jan. 4, 2008); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *49 (S.D.N.Y. July 27, 2007); *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *11 (S.D.N.Y. Mar. 30, 2007).  While the lodestar is still used a cross check when courts apply the percentage method, courts do not have to scrutinize fee records to the same extent they would if applying only the lodestar method. *Goldberger*, 209 F.3d at 50; *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at *15 (S.D.N.Y. Nov. 6, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

> **B.**     **A Review of the Relevant Factors Supports Class Counsels' Fee Application.**

Reasonableness is the touchstone for determining attorneys' fees.  In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

> (1)     the time and labor expended by counsel;
>
> (2)     the magnitude and complexities of the litigation;
>
> (3)     the risk of litigation;
>
> (4)     the quality of representation;
>
> (5)     the requested fee in relation to the settlement; and
>
> (6)     public policy considerations.

209 F.3d at 50 (quotations omitted).  All of the *Goldberger* factors weigh in favor of granting approval to Class Counsel's fee application here.

(1)    Class Counsel's Time and Labor

While the $3.265 million settlement and meaningful injunctive relief is an excellent result, a significant effort was required to achieve it.

Class Counsel investigated and prosecuted this complex "hybrid" state New York Labor Law ("NYLL") class action and federal Fair Labor Standards Act ("FLSA") collective action for more than two and one-half years.  They interviewed more than 46 servers, bussers, runners, and bartenders from six restaurants to determine hours worked, wages paid, duties of individuals who received tips, and other relevant information.  (Swartz Dec. ¶ 21.)  Class Counsel obtained supportive declarations from 33 workers.  (Swartz Dec. ¶ 21.)  Class Counsel took several depositions including the depositions of the Fireman Group's Chief Operating Officer, Kevin Robinson, and the Fireman Group's Director of Information Technology, David Little.  (Swartz Dec. ¶¶ 35.)  They also defended depositions of three Plaintiffs.  (Swartz Dec. ¶ 34.)

Class Counsel obtained, reviewed, and analyzed thousands of pages of hard-copy documents and electronically stored data including, but not limited to, employee handbooks, time and payroll records, human resources data, financial records, sales data, employee lists, nine transcripts of depositions taken in the companion case, *Arroyo v. Redeye Grill, LP,* No. 06 Civ. 0381 ("*Arroyo*"), the transcripts from a temporary restraining order hearing in *Arroyo*, and documents produced in *Arroyo*.  (Swartz Dec. ¶ 39.)  Class Counsel also responded to Defendants' document requests.  (Swartz Dec. ¶ 40.)

After Defendants had embarked on a campaign of retaliation against the workers for joining this lawsuit, Class Counsel filed a Motion for An Order to Show Cause, Temporary Restraining Order, and Preliminary Injunction enjoining Defendants from retaliating against Plaintiffs for asserting their rights under the FLSA and the NYLL and participating in this action.

Class Counsel spent a significant amount of time preparing witnesses to testify at an evidentiary hearing. As the hearing was about to begin, the parties settled the dispute. (Swartz Dec. ¶ 31.)

Class Counsel filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) and was prepared to argue the motion when the parties decided to return to mediation. In order to reach a settlement, Class Counsel was required to prepare for and attend nine mediation sessions and multiple court conferences and settlement hearings. (Swartz Dec. ¶¶ 45-69.) After the parties had reached an agreement on the terms of the Settlement Agreement, Class Counsel filed a motion asking the Court to order Defendants to make all settlement payments in accordance with the Settlement Agreement. (Swartz Dec. ¶ 56.)

Class Counsel filed motions for preliminary and final approval of the settlement. (Swartz Dec. ¶ 68, 113.) They worked with the Claims Administrator and the Defendants to ensure that the Claims Administrator had all of the data necessary to send the Notice to the Class. (Swartz Dec. ¶ 82.) Class Counsel has also responded to at least 75 calls and emails from Class Members and Class Representatives with questions about the settlement. (Swartz Dec. ¶ 83.)

For all of these reasons, Class Counsel expended 4,323 hours of professional time for an aggregate lodestar of $1,511,160.50. (Swartz Dec. ¶ 9.) The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. (Swartz Dec. ¶ 7.)

Although O&G is relatively large for a plaintiffs' side employment law firm, a small team of attorneys and staff were utilized at any one time in order to minimize duplication of efforts and maximize billing judgment. (Swartz Dec. ¶ 8.) They also made every effort to have work

performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.  (Swartz Dec. ¶ 8.)

Moreover, the requested fee is not based solely on time and effort already expended; rather, it is also meant to compensate Class Counsel for time Class Counsel will be required to spend administering the settlement in the future.  (Ex. C (Stlmt. Agmt.) ¶ 3.2.)  In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.  (Swartz Dec. ¶ 11.)  For example, many of the Class Members who have received the Notice have had questions regarding the settlement.  In fact, since the Notice was sent out to the class members, Class Counsel (and staff) have expended dozens of hours responding to questions about the case and will continue to do so as the settlement administration continues.  (Swartz Dec. ¶ 11.)

(2)    <u>Magnitude and Complexity of the Litigation</u>

The size and difficulty of the issues in a case is a significant factor to be considered in making a fee award.  *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996).

The legal issues involved in this action are recognized by the federal courts as particularly difficult to prove.  As the Supreme Court has recognized, "FLSA claims typically involve complex mixed questions of fact and law . . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

9

Of the FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations (under New York Labor Law) are brought as ("opt out") class actions pursuant to Federal Rule of Civil Procedure 23, in the same action as the FLSA collective action ("opt in") mechanism pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts are being applied and analyzed similarly under both statutory frameworks, justice is served by having the litigation in one forum for consistency and efficiency. *See Ansoumana v. Gristede's Operating Corp,* 201 F.R.D. 81, 89 (S.D.N.Y. 2001). However, it requires complex questions of law, including analysis of tip sharing requirements under the FLSA and the NYLL, retaliation under both statutory frameworks, and the definition of "compensable" time for preliminary and post shift work.

In addition, here, disputed questions of fact loomed large, including whether Defendants required Plaintiffs to share their tips with ineligible employees; failed to pay Plaintiffs at the proper overtime rate; required Plaintiffs to pay to purchase and launder uniforms; failed to pay Plaintiffs for hours worked off-the-clock; failed to pay Plaintiffs spread-of-hours pay and call-in-pay; deducted credit card processing fees from Plaintiffs' tips; deducted the costs of breakages and spillages from Plaintiffs' tips; retaliated against workers who participated in this action; and failed to keep accurate time records.

Given the number of class members (more than 1300) and the mixed questions of law and fact at issue, this factor supports approving Class Counsel's attorneys' fees. *See Frank*, 228 F.R.D. at 189 (finding mixed questions of law and fact of a FLSA and NYLL wage and hour action complex in nature, which supported a 38% common fund attorneys' fee award).

(3)     <u>Risk of Litigation</u>

The risk of litigation is also an important factor in determining a fee award.  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  *Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974).  "[D]espite the most rigorous and competent of efforts, success is never guaranteed."  *Id.* at 471.

Class Counsel undertook to prosecute this action without an assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. (Swartz Dec. ¶ 12.)  Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming.  Any lawyer undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.

Moreover, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages.  The absence of accurate time records not only contributed to the complexity of this case, but also presented a significant hurdle to successful litigation.  In the absence of accurate time records that can easily corroborate and verify the claims of hours worked by employees, such claims can be disputed through the testimony of Defendants' managers and supervisors.  Such testimony and the resultant credibility issues create a significant risk if this matter proceeded to trial.  *See, e.g.*, *Brunson v. The City of New York*, Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 U.S. Dist. LEXIS 18434, at *13 (S.D.N.Y. Dec. 21, 2000) (awarding a 50% premium to class counsel due to difficulty presented by the risk of litigation where class counsel "faced significant obstacles in the lack of reliable means of verifying hours

worked and tasks performed by individual plaintiffs.").

In addition to the risk of certification, other litigation risks, and of losing on the merits, Class Counsel faced the real possibility that Defendants could enter into bankruptcy at some point during the course of litigation. Defendants have repeatedly claimed that they are in financial straights, especially most recently, in the wake of the current financial crisis. (Swartz Dec. ¶ 15.) Moreover, given the effect of the current financial crisis on the restaurant industry in New York,[4] Defendants' financial stability is even more in doubt. In addition, Class Counsel performed an asset search on some of the Individual Defendants and did not find evidence that they have sufficient liquid assets to pay a greater judgment. (Swartz Dec. ¶ 15.)

Class Counsel stood to gain nothing in the event the case was unsuccessful. (Swartz Dec. ¶ 12.) Accordingly, the risk of litigation and collection should weigh heavily in favor of the Class Counsel's request for the approval of attorneys' fees provided for in the Settlement Agreement.

(4)    Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

---

[4] "Restaurants Stop Playing Hard to Get," Frank Bruni, Feb. 4, 2009, The New York Times, available at: http://www.nytimes.com/2009/02/04/dining/04note.html; "Restaurant Chains Close as Diners Reduce Spending," Michael M. Grynbaum, The New York Times, July 30, 2008, available at: http://www.nytimes.com/2008/07/30/business/30restaurant.html?emc=eta1; "Putting Capital at the Top of the Menu," Amy Cortese, The New York Times, Feb. 1, 2009, available at: http://www.nytimes.com/2009/02/01/business/01sqft.html?emc=eta1; "Food Prices Expected to Keep Going Up," Andrew Martin, The New York Times, Nov. 27, 2008, available at: http://www.nytimes.com/2008/11/27/business/27food.html?emc=eta1

Defendants agreed to pay a total of $3,265,000, plus 9% interest to settle this litigation. Each class member who submitted a Claim Form and Release will receive a series of payments based on an allocation formula that takes into account the number of pay periods worked during the FLSA and New York limitations periods and the measures of damages available.  (Ex. C (Stlmt. Agmt.) ¶ 3.4.)  The resulting average settlement for the 504 Class Members who filed Claim Forms and Release is more than $6,478 plus interest before attorneys' fees and costs are deducted.  (Swartz Dec. ¶ 85.)

In addition to the monetary relief, Class Counsel secured injunctive relief including changes in Defendants' mandatory tip sharing policies; a requirement that Defendants comply with call-in pay, spread-of-hours pay, and mandatory break laws; a further prohibition against retaliation; a procedure encouraging employees to file employment-related complaints; and human resources training for supervisory employees.  (Ex. C (Stlmt. Agmt.) ¶ 3.6.)

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable and the injunctive relief is meaningful. Importantly, the substantial settlement amounts are available to Class Members without the uncertainty of trial, and are being delivered through this expeditious settlement rather than after years of additional litigation.  Such an outcome qualifies the results of this settlement as excellent under any reasonable assessment.  (Swartz Dec. ¶ 5.)

Class Counsel has substantial experience in prosecuting large scale wage and hour class and collective actions such as this.  Not only does O&G have substantial wage and hour and complex litigation experience, but also special expertise in prosecuting federal and state wage and hour claims.  *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (appointing O&G as class counsel on the basis of its "experience[] in handing wage and hour

class actions and . . . knowledge of the applicable law"); *Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *6 (S.D.N.Y. Mar. 24, 2008) ("[O&G] ha[s]
substantial experience prosecuting class action cases involving wage and hour claims");
*Stefaniak v. HSBC Bank USA, N.A.*, No.05 Civ. 720 S, 2008 U.S. Dist. LEXIS 53872, at *8
(W.D.N.Y. June 28, 2008) (O&G "are experienced in prosecuting and settling employment-
based class and collective actions, including wage and hour matters," "possess the experience
and ability to represent effectively the class's interests," and "[have] adequately represented the
class in this action.") (internal brackets and citation omitted); *Torres v. Gristede's Operating
Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *49 (S.D.N.Y. Sept. 29, 2006)
("[O&G] is qualified, experienced, and generally able to conduct the [class wage and hour]
litigation.") (internal quotations omitted); *Rosenburg v. I.B.M.*, No. 06 Civ. 00430, 2007 U.S.
Dist. LEXIS 53138, at **5-6 (N.D. Cal. July 12, 2007) (appointing O&G as class counsel in
wage-and-hour class action); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87
(S.D.N.Y. 2001) (O&G is "experienced and well-qualified in the fields of labor law and class
litigation and, in particular, wage-and-hour class litigation").

    Class Counsel's experienced representation in this case was directly responsible for
bringing about the positive settlement and weighs in favor of granting the requested fees.
(Swartz Dec. ¶ 5); *Velez*, 2007 U.S. Dist. LEXIS 46223, at *25 ("Lead Counsel's experience
representing plaintiffs in class actions" contributed to a finding 33.33% a reasonable fee award.);
*Frank*, 228 F.R.D. at 189 ("Counsel is experienced in class action lawsuits, having participated
in similar actions in the past.  Further counsel has extensive experience in employment litigation,
and particular expertise with the FLSA.").

(5)     Fee in Relation to the Settlement

Courts also consider the size of the settlement to ensure that the percentage award does not constitute a "windfall" for plaintiffs' counsel. *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964, at **23-24 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (citing *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. 2003)). Where the size of the fund is relatively small, courts will find a higher percentage award reasonable. *See, e.g., Frank*, 228 F.R.D. at 189 ("due to the relatively small settlement involved here [$450,000], the requested fee award [of 40%] is necessary to compensate counsel adequately."); *In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 68964, at **23-24 (finding a 30% fee would not constitute a windfall "given the modest size of the settlement"); *Velez*, 2007 U.S. Dist. LEXIS 4622, at *25 (noting "the relatively small size of settlement fund" in granting a 31% fee award).

Courts in the Second Circuit routinely award one-third of the fund for attorneys' fees for settlements similar to this one. For example, in *Stefaniak*, another wage and hour class action, the court awarded the attorneys one-third of the $2.9 million settlement fund, finding that it was a "'fair and appropriate award.'" 2008 U.S. Dist. LEXIS 53872, at **9-10.

In fact, New York courts routinely award fee percentages around thirty-three percent in cases with settlement funds *substantially larger* than this one even though "[a]s the size of the settlement fund increases, the percentage of the fund awarded as fees often decreases so as to prevent a windfall to plaintiffs' attorneys." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at *25 (S.D.N.Y. Oct. 19, 2005) (citation omitted) (awarding 30% fee from a $10 million fund); *see e.g., Maley*, 186 F. Supp. 2d at 370 (awarding 33 1/3% fee on fund

valued at $11.5 million); *In re Warnaco Group, Inc. Sec. Litig.*, No. 00 Civ. 6266, 2004 U.S.

Dist. LEXIS 13126, at *6 (S.D.N.Y. July 13, 2004) (awarding 30% fee on a $12.85 settlement);

*Taft,* 2007 U.S. Dist. LEXIS 9144, at **10-11 (awarding 30% fee on a $15 million settlement)

(collecting cases holding same); *Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 U.S. Dist.

LEXIS 5211, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund); *In re

Avon Products, Inc. Sec. Litigation*, No. 89 Civ. 6216, 1992 U.S. Dist. LEXIS 17072, at **7-8

(S.D.N.Y. Nov. 5, 1992) (awarding 30% of $6.4 million settlement fund).  A fee of thirty-three

percent of the Settlement Fund is reasonable and consistent with the norms of class litigation in

this Circuit.

(6)    <u>Public Policy Considerations</u>

Public policy considerations weigh in favor of granting Class Counsel's requested fees.

In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have

taken into account the social and economic value of class actions, and the need to encourage

experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F.

Supp. 2d at 396.  The FLSA and the NYLL are remedial statutes designed to protect the wages

of workers.  See *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's

objective, which is ensuring that every employee receives "a fair day's pay for a fair day's

work.").   Fair compensation for attorneys who prosecute those rights by taking on such

litigation furthers the remedial purpose of those statutes.

Many courts have recognized that fee awards in cases such as this serve the dual purpose

of encouraging representatives, acting as "private attorneys general," to seek redress for damages

and discourage future misconduct of a similar nature.  *Dolgow v. Anderson*, 43 F.R.D. 472, 487

(E.D.N.Y. 1968) (citations omitted), reversed and remanded on other grounds, 438 F.2d 825 (2d

16

Cir. 1970).  Courts, therefore, look with favor upon awarding attorneys' fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized."  *Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973).  Class actions in particular have been recognized as an invaluable safeguard of public rights.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964).  Especially with relatively small class action settlements, like here, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard."  *Frank*, 228 F.R.D. at 189.  If courts denied "fees sufficient to compensate counsel for at least a substantial portion of the work [they] . . . performed, no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]"  Id.

Here, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee of thirty-three percent.  The award of Class Counsel's requested fees will encourage the prosecution of similar claims and further a significant goal of public interest.

*       *       *

All the *Goldberger* factors justify granting Class Counsel's requested fees as reflected in the Settlement Agreement.

## III.    THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF THIRTY-THREE PERCENT OF THE SETTLEMENT FUND.

Following the *Goldberger* decision, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check."  *Goldberger*, 209 F.3d at 50.  The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."  *Id.*  As part of the cross check, the lodestar is determined by multiplying the hours reasonably

17

expended on the case by a reasonable hourly rate. *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *27. Courts then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky*, 888 F. Supp. 551, 562; *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

Courts in the Second Circuit award lodestar multipliers that range anywhere from 2 to 6. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at **78-79 (finding that the "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit); *Maley*, 186 F. Supp. 2d at 371 (finding that the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 473 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar); *Rabin v. Concord Assets Group, Inc.,* No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS 18273, at **3-4, (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ 7905, 1992 U.S. Dist. LEXIS 12702, at **19-22, (S.D.N.Y. Aug. 24,1992) (awarding multiplier of 6). Here, Class Counsel does not seek a lodestar multiplier, but rather *a fraction of the lodestar they incurred*.

In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, the "reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Id.* Class Counsel spent approximately 4,523 hours litigating this matter over the course of more than two and one-half years. The time spent by Class Counsel is described in the Declaration of Justin M. Swartz and O&G's contemporaneous time records attached thereto.

(Swartz Dec. ¶¶ 6, 9; Ex. B (Time Records).)  The 4,323 hours spent by Class Counsel results in a lodestar of $1,511,160.50.  If the Court grants this motion, Class Counsel will recover only 69% of their lodestar fees.

Thus, the lodestar cross check demonstrates that Class Counsel will not be compensated for a substantial portion of time they dedicated to prosecuting this case on behalf of the Class. Far from a multiplier, an award of thirty-three percent here results in a fraction of Class Counsel's total fees.  Accordingly, an award of thirty-three percent of the Settlement Fund is reasonable.  *See, e.g., Frank*, 228 F.R.D. at 188 (awarding 38.26% of the $450,000 fund for attorneys' fees, which represented only 78.4% of the lodestar).

## IV.  CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT.

Class Counsel requests expenses in the amount of $50,000 to be paid from the Settlement Fund.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).

Here, Class Counsel's un-reimbursed expenses were incidental and necessary to the representation of the Class.  (Swartz Dec. ¶ 9.)  They include costs for witness fees, court reporters, expert fees, mediation, telephone charges, postage, transportation, working meals, photocopies, electronic research, and more.  (Swartz Dec. ¶ 9.)  A detailed accounting of these expenses is attached as Exhibit A to the Declaration of Justin M. Swartz.  Each expense incurred was necessary to the successful prosecution of this complex litigation and supported the ultimate settlement between the parties.  Class Counsel is seeking only $50,000 in costs even though they

incurred $52,757.23.  (Swartz Dec. ¶ 9; Ex. A (Summ. Fees & Costs).)  Accordingly, the Court should grant the expense award.

## V.     ALL BUT ONE CLASS MEMBER WITHDREW THEIR OBJECTIONS TO CLASS COUNSEL'S FEE REQUEST.

On February 25, 2009 ("Objection Letter"), fifteen Class Members, including ten Named Plaintiffs ("Objecting Plaintiffs"), objected to Class Counsel's fee request.  (Swartz Dec. ¶ 87.)  On March 11, 2009 ("Rescission Letter"), all but one of the Objecting Plaintiffs wrote a letter to the Court withdrawing their objections and acknowledging that they were wrong about certain issues they had raised.  (Swartz Dec. ¶ 97.)  Because one Objecting Plaintiff has not yet rescinded his objection, Class Counsel briefly responds below to the substance of the Objection Letter.  (Swartz Dec. ¶ 99.)

First, the Objecting Plaintiffs claim that Class Counsel did not spend a substantial amount of time litigating this case and, in particular, the preliminary injunction motion.  (Ex. H (Obj. Ltr.) at 1.)  They claim that Class Counsel simply capitalized on the work that the attorneys had done in *Arroyo*.  (Ex. H (Obj. Ltr.) at 1.)  That is not true.  Far from riding on the coattails of the attorneys in *Arroyo*, as the Objection Letter suggests, Class Counsel spent a considerable amount of time assisting them with their preliminary injunction motion.

To the extent this objection impacts the *Goldberger* analysis regarding the time and labor expended by counsel, it is unfounded.  Class Counsel spent more than 581 hours answering calls from class members concerned about retaliation, addressing retaliation issues with defendants' counsel, obtaining declarations, drafting the preliminary injunction motion, preparing witnesses for the preliminary injunction hearing, and preparing for and attending the preliminary injunction hearing, and negotiating the resolution.  (Swartz Dec. ¶ 33.)  In total, Class Counsel spent more than 4,523 hours litigating this case, yet is seeking only 69% of its lodestar.  The Objecting

Plaintiffs now recognize Class Counsel played a "significant role" in obtaining a temporary injunction and that they are seeking less than their lodestar. (Ex. I (Resc. Ltr.) at 1.)

Second, the Objecting Plaintiffs claimed that Class Counsel did not sufficiently communicate with them. (Ex. H (Obj. Ltr.) at 1.) On the contrary, Class Counsel fully discharged their duty to keep Named Plaintiffs and the Class informed of the status of the lawsuit, which included notifying them the of all significant events in the litigation, sending them copies of important filings, regularly sending them letters and emails updating them about the status of the case, regularly meeting with them, and regularly calling them or responding to their calls. To the extent this affects the *Goldberger* factor regarding the quality of the representation, Objecting Plaintiffs have repeatedly expressed their satisfaction with Class Counsel's efforts litigating the case, negotiating the settlement, and obtaining significant monetary relief and company-wide injunctive relief on the workers' behalf. (Swartz Dec. ¶¶ 129-143.) Class Counsel is aware of no authority that a court should reduce fees for alleged failure to communicate with the Class.

Third, the Objecting Plaintiffs claimed that they were asked during the mediation to sign a second retainer with different fee provisions. (Ex. H (Obj. Ltr.) at 2.) This is not true. All of the Named Plaintiffs signed retainer agreements. (Swartz Dec. ¶ 100.) With the exception of two Named Plaintiffs who accidentally signed two retainer agreements that were identical in nearly every respect, including the fee arrangement, no Named Plaintiff (or Class Member) was ever asked to sign a second retainer agreement. (Swartz Dec. ¶ 100.) Class Counsel did ask several Class Members to sign individual retainer agreements allowing Class Counsel to represent them with respect to their individual retaliation claims and before the National Labor Relations Board. (Swartz Dec. ¶ 100.) The Objecting Plaintiffs now acknowledge that none of

them was asked to sign a second retainer agreement different than the one they had originally signed.  (Ex. I (Resc. Ltr.) at 1; Swartz Dec. ¶ 100.)  Thus, this objection is moot.

Fourth, the Objecting Plaintiffs challenged the method of calculating attorneys' fees from the fund, particularly the calculation of thirty-three percent of the fund after deducting costs rather than before.  Although the Settlement Agreement provides that Class Counsel is entitled to thirty-three percent of the Settlement Fund before costs are deducted, (Ex. C (Stlmt. Agmt) ¶¶ 3.2(A), 3.1(D)(1), 3.1(E)(1), 3.1(F)(1)), they are seeking thirty-three percent of the Settlement Fund *after* costs are deducted.  (Swartz Dec. ¶ 9, 79.)  Thus, this objection is moot.

Given the fact that the objections are either moot or unfounded and that all but one Objecting Plaintiff rescinded the objections, the Court should not reduce Class Counsel's fee request.

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding attorneys' fees in the amount of thirty-three percent of the Settlement Fund (less $58,000); and (ii) reimbursement of $50,000 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting the claims in this action.

Dated:  March 26, 2009
         New York, NY

Respectfully submitted,

**OUTTEN & GOLDEN LLP**
By:

  /s/ Justin M. Swartz
Justin M. Swartz (JS 7989)

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
Tara Lai Quinlan (TQ 0717)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000