IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3 1 MAR 2009

---

DAVID MOHNEY, et al.,

              Plaintiffs,

    -against-

SHELLY'S PRIME STEAK, STONE CRAB &
OYSTER BAR a/k/a SHELLY'S NEW YORK a/k/a
SHELLY'S NEW YORK STEAKHOUSE AND
OYSTER BAR, et al.,

           Defendants.

06 Civ. 4270 (PAC)

---

## [PROPOSED] FINAL ORDER AND JUDGMENT GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

On June 6, 2006, Plaintiffs filed a complaint in the above-captioned action alleging that

Defendants had violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law

("NYLL") by requiring Plaintiffs to share their tips with ineligible employees, failing to pay

Plaintiffs at the proper overtime rate, requiring Plaintiffs to pay to purchase and launder

uniforms, failing to pay Plaintiffs for hours worked off-the-clock, failing to pay Plaintiffs spread-

of-hours pay and call-in-pay, deducting credit card processing fees from Plaintiffs' tips,

deducting the costs of breakages and spillages from Plaintiffs' tips, retaliating against workers

who participated in this action, and failing to keep accurate time records. Plaintiffs brought their

FLSA claims as a collective action under 29 U.S.C. § 216(b) and their NYLL claims as a class

action under Fed. R. Civ. P. 23 on behalf of themselves and a putative class of servers, runners,

and/or bussers at Fireman Group Restaurants in New York City. Defendants denied the

allegations.

After participating in various mediation sessions with mediator Carol Wittenberg of

JAMS, and attending multiple settlement conferences with the Court, the parties reached an

agreement to resolve this case. The terms of that agreement are memorialized in the Joint

Stipulation of Settlement and Release ("Settlement Agreement"). Without conceding the validity

of Plaintiffs' claims and without admitting liability, Defendants agreed, among other things, to

create a Settlement Fund of $3,265,000 plus interest in order to resolve the claims. In addition,

Defendants agreed to the following injunctive relief for a four-year period ("Injunctive Relief"):

(1)   Corporate Defendants will not require that workers at Fireman Group Restaurants
      share tips with Zone Maitre d's, floor managers, or anybody with supervisory
      authority, and to prohibit zone maitre d's, floor managers, or anybody with
      supervisory authority from sharing in a tip pool.

(2)   Corporate Defendants will not require servers, bussers, or runners to provide their
      own uniforms other than black pants, black shoes and socks, and a black or white
      shirt. To the extent that any further uniform elements are required by the
      Corporate Defendants, such as vest, special-colored tie, cap, jacket, or apron,
      those items will be provided and laundered by the Corporate Defendants.
      Corporate Defendants will not require servers, bussers, or runners to purchase
      their work attire from any designated supplier or suppliers. If Corporate
      Defendants at any time require servers, bussers, or runners to wear tuxedo pants,
      such pants will be provided and laundered by the Corporate Defendants.

(3)   At Fireman Group Restaurants that currently do not deduct credit card fees,
      Corporate Defendants will not deduct such fees until at least the date of the Order
      Granting Final Approval.

(4)   Corporate Defendants will comply with the law with respect to call-in pay,
      spread-of-hours pay, break requirements, and deductions. Corporate Defendants
      will not ask Fireman Group workers to pay the bills of customers who leave
      without paying their bills. Corporate Defendants will comply with the wage and
      hour laws with respect to keeping accurate records of all hours worked by each
      employee, and, if necessary, Corporate Defendants will create and enforce
      reasonable policies for that purpose.

(5)   Corporate Defendants will not retaliate against workers at Fireman Group
      Restaurants for their participation in the litigation or this settlement, or for
      complaining about the types of issues raised in the Litigation.

2

(6)    Corporate Defendants agree to have in place, and notify all employees of a procedure that encourages employees to complain about any perceived discrimination, harassment, wage issues, or other human resources issues without retaliation. Such a procedure will have alternate reporting channels, including to the Managing Director or General Manager at each restaurant, the Vice President of Operations, the Senior Vice President of operations for the Fireman Group Café Concepts, Inc., or a human resources professional. Defendants agree to keep employees' complaints confidential to the extent possible. Defendants agree to implement a Concern Procedure.

(7)    In addition to the Concern Procedure, at least once per quarter, the General Manager of each restaurant will select an employee who does not work in a management position (hereinafter, "designated employee") with whom other employees may discuss any matters of interest to the employee or other employees regarding operations at the restaurant. Notice of the name of the designated employee who has been selected for that quarter will be given at least one week in advance to all employees in the restaurant, and employees will be encouraged to bring any issues they may have to the designated employee so that the issues may be raised with the General Manager. The General Manager will make every effort to choose designated employees from various employment classifications so that each classification is represented throughout the year. Participation by the General Manager in the discussion with the designated employee will not constitute a promise by the General Manager or by management to take action on any issue discussed, though action may be taken by the General Manager or by management when appropriate, in the sole discretion of the General Manager and management.

(8)    Corporate Defendants agree to provide all supervisory employees at Fireman Group Restaurants, and all employees at Fireman Group restaurants who are involved in the timekeeping and/or payroll process, with training that will include training on the Fair Labor Standards Act and the New York Labor Law.

On December 16, 2008, the Court entered an order preliminarily approving the settlement, certifying a settlement class, designating Outten & Golden LLP ("O&G") as Class Counsel, and authorizing the dissemination of the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Notice"). (Docket No. 235) (the "Preliminary Approval Order").

On January 12, 2009, the Claims Administrator mailed the Notice to 1323 Class Members, informing them of their right to opt out of the action, object, or submit a claim form and stating Class Counsel's intention to seek the payment of service payments to 14 plaintiffs and to seek 33% of the Settlement Fund for attorneys' fees plus costs. 541 Class Members

3

submitted valid claim forms.[1]  No Class Member requested exclusion.

On March 18, 2009, Plaintiffs filed their Motion for Certification of a Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval").  On March 25, 2009, Plaintiffs filed their Motion for Approval of Attorneys' Fees, Reimbursement of Expenses, and Service Payments ("Motion for Attorneys' Fees").  Defendants took no position with respect to either of these motions and did not object to the request for attorneys' fees and service payments.

The Court held a fairness hearing on March 31, 2009.  No Class Member objected to the settlement.[2]

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees, the supporting memoranda, the oral arguments presented at the March 31, 2009 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the March 31, 2009 fairness hearing, and for good cause shown,

---

[1] Eleven Class Members submitted untimely Claim Forms and Releases and seven had Claim Forms and Releases with unreadable postmarks.  Subject to Court approval, the parties have amended the Settlement Agreement to accept as valid the eleven untimely Claim Forms and Releases and the seven that were returned without readable postmarks.

[2] The Claims Administrator received 15 timely objections and 3 untimely objections dated February 25, 2009.  All but one have since been withdrawn.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1.    The Court certifies the following class under Fed. R. Civ. P. 23(e), for settlement purposes:  all persons who have worked as servers, runners, and/or bussers at Fireman Group Restaurants at any time between June 6, 2000 and April 1, 2007.

2.    Plaintiffs meet all of the requirements for class certification under Fed. R. Civ. P. 23(a) and (b)(3).

3.    Plaintiffs satisfy Fed. R. Civ. P. 23(a)(1) because there are 1323 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.")

4.    Plaintiffs satisfy Fed. R. Civ. P. 23(a)(2) because Plaintiffs and the Class Members share common issues of fact and law including whether Defendants required Plaintiffs to share their tips with ineligible employees, failed to pay Plaintiffs at the proper overtime rate, required Plaintiffs to pay to purchase and launder uniforms, failed to pay Plaintiffs for hours worked off-the-clock, failed to pay Plaintiffs spread-of-hours pay and call-in-pay, deducted credit card processing fees from Plaintiffs' tips, deducted the costs of breakages and spillages from Plaintiffs' tips, retaliated against workers who participated in this action, and failed to keep accurate time records. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at **39-40 (S.D.N.Y. Sept. 29, 2006).

5.    Plaintiffs satisfy Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

6.    Plaintiffs satisfy Fed. R. Civ. P. 23(a)(4) because Plaintiffs' interests are not

5

antagonistic or at odds with Class Members, *see Toure v. Cent. Parking Sys.,* No. 05 Civ. 5237,

2007 U.S. Dist. LEXIS 74056, at **18-19 (S.D.N.Y. Sept. 28, 2007), and because Plaintiffs'

counsel "has an established record of competent and successful prosecution of large wage and

hour class actions, and the attorneys working on the case are likewise competent and experienced

in the area." *See Damassia*, 250 F.R.D. at 158.

       7.      Plaintiffs also satisfy Rule 23(b)(3). Common factual allegations and a common

legal theory predominate over any factual or legal variations among Class Members. *See*

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (the issue of

whether employees were supposed to be paid overtime was "about the most perfect question[] for

class treatment"). Class adjudication of this case is superior to individual adjudication because it

will conserve judicial resources and is more efficient for class members, particularly those who

lack the resources to bring their claims individually. *See Damassia*, 250 F.R.D. at 161, 164.

**APPROVAL OF THE SETTLEMENT AGREEMENT**

       8.      The Court hereby grants the Motion for Final Approval and finally approves the

settlement as set forth in the Settlement Agreement and in this Order under Rule 23 and the

FLSA. The settlement is fair, reasonable, adequate, and not a product of collusion. *See* Fed. R.

Civ. P. 23(e); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (quoting *Joel*

*A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).

       9.      The $3,265,000 settlement amount plus interest is substantial and the settlement

includes meaningful injunctive relief. In reaching this conclusion, the Court is satisfied that the

settlement was fairly and honestly negotiated. It was the result of vigorous arms-length

negotiations, which were undertaken in good faith by counsel with significant experience

litigating wage and hour class actions, and serious questions of law and fact exist such that the

6

value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation. *See D'amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citing *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000)).

10.     The Court gives weight to the parties' judgment that the settlement is fair and reasonable, as well as to the Class's favorable reaction to the settlement.

11.     The Court approves the FLSA settlement and finds that the FLSA settlement is a fair and reasonable resolution of a *bona fide* dispute reached as a result of contested litigation. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

**DISSEMINATION OF NOTICE**

12.     Pursuant to this Court's Preliminary Approval Order, the Notice was sent by first-class mail to each identified class member at his or her last know address (with a remailing of returned Notices). This Court finds that the Notice fairly and adequately advised the members of Class of the terms of the settlement and the claims process for the members of the Class to obtain the benefits available thereunder, as well as the right of members of the Class to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted on March 31, 2009. Class Members were provided the best notice practicable under the circumstances.

13.     The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

14.     The Court confirms Settlement Services, Inc. ("SSI") as the Claims Administrator.

**APPOINTMENT OF O&G AS CLASS COUNSEL, AWARD OF FEES AND COSTS TO O&G, AND AWARD SERVICE PAYMENTS TO NAMED PLAINTIFFS**

15.    The Court appoints Justin M. Swartz and Linda A. Neilan of Outten & Golden LLP as Class Counsel because they meet all of the requirements of Fed. R. Civ. P. 23(g). *See Damassia*, 250 F.R.D. at 165 (Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

16.    O&G did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

17.    O&G's lawyers have substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law. *See, e.g., Damassia*, 250 F.R.D. at 165 (appointing O&G as class counsel on the basis of its "experience[] in handing wage and hour class actions and . . . knowledge of the applicable law").

18.    Courts have repeatedly found O&G to be adequate class counsel in employment law class actions. *See, e.g., Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *6 (S.D.N.Y. Mar. 24, 2008).

19.    The work that O&G has performed both in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests

20.    O&G has committed substantial resources to prosecuting this case.

21.    The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards O&G

thirty three percent (33%) of the Fund (including any interest in the Fund) after costs are disbursed.

22.    The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in the Second Circuit." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (collecting cases). Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit. *See, e.g., Gilliam*, 2008 U.S. Dist. LEXIS 23016; *Strougo ex rel. Brazilian Equity Fund, Inc.*, 258 F. Supp. 2d at 262 (33 1/3% of settlement fund approved for attorneys' fees); *In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs); *Adair v. Bristol Technology Sys.*, No. 97 Civ. 5874, 1999 U.S. Dist. LEXIS 17627, at **8-9 (S.D.N.Y. Nov.16, 1999) (33% of settlement fund approved for attorneys' fees, plus costs); *Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211, at *1 (S.D.N.Y. Apr. 21, 1993) (33 1/3% of settlement fund approved for attorneys' fees); *In re Gulf Oil/Cities Service Tender Offer Litigation*, 142 F.R.D. 588, 596-597 (S.D.N.Y.1992) (33 1/3% of settlement fund approved for attorneys' fees); *In re Avon Prods. Inc., Sec. Litig.*, No. 89 Civ. 6216, 1992 U.S. Dist. LEXIS 17072, at *8 (S.D.N.Y. Nov. 6, 1992) ("The request for 30% is in line with numerous awards in this Court and elsewhere in recent litigation."); *In re Crazy Eddie*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8% of settlement fund approved for attorneys' fees, plus costs). The attorneys' fees requested were entirely contingent upon success. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of

9

compensation.

23.    Class Counsel are also awarded reimbursement of litigation costs and expenses in the amount of $50,000.

24.    The attorneys' fees awarded and the amount in reimbursement of litigation costs and expenses shall be paid from the Settlement Fund.

25.    The Court finds reasonable service awards of $6,000 to the following Plaintiffs: David Mohney, Solvie Karlstrom, Benjamin McGroarty, Christel Ferguson, Christopher Ruskis, Jeffrey Baskin, Sekou Luke, Mohmammed Mahbubur Rahman, Joglul Islam, Greg Bibens, Helena Liljeblad, William Spaugh, Roy Forlong, and Chantal Georges.  These amounts shall be drawn from the Settlement Fund.

26.    Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.  *See Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").  *See, e.g., Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *14 (incentive payments to six named plaintiffs for services to class "reasonable" and "appropriate use of the overall settlement").

## CONCLUSION

27.     The "Effective Date" of the settlement shall be 30 days after the date of this Order

if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the

settlement shall be the day after all appeals are finally resolved.

28.     Within 5 days of this Order, Defendants' counsel shall transfer all of the money in

the escrow account in which they are holding the settlement funds to the interest-bearing escrow

account created and controlled by the Claims Administrator ("Escrow Account").

29.     Within 5 days of the Effective Date, the Claims Administrator will distribute the

money in the Escrow Account by making the following payments in the order below:

a.    Reimbursing Class Counsel costs of $50,000, which the Court finds to be
      reasonable;

b.    Paying Class Counsel thirty-three percent of the amount remaining in the Escrow
      Account less $58,000 (after $50,000 has been deducted for Class Counsel's
      costs).[3]

c.    Paying the Claims Administrator $12,500 (which is one-half of Plaintiffs' portion
      of the Claims Administrator's fees as described in Section 2.1 of the Settlement
      Agreement).

d.    Paying $6,000 each to David Mohney, Solvie Karlstrom, Benjamin McGroarty,
      Christel Ferguson, Christopher Ruskis, Jeffrey Baskin, Sekou Luke, Mohmammed
      Mahbubur Rahman, Joglul Islam, Greg Bibens, Helena Liljeblad, William
      Spaugh, Roy Forlong, and Chantal Georges as described in Section 3.3 of the
      Settlement Agreement.

e.    Paying the remainder of the money in the Escrow Account to Class Members who
      submitted Claim Forms and Releases in accordance with the allocation plan
      described in Section 3.4 of the Settlement Agreement.

30.     On September 30, 2009, the Claims Administrator will distribute the money in the

[3] Class Counsel is requesting thirty-three percent of the Settlement Fund less $58,000 (after costs
have been deducted).

11

Escrow Account by making the following payments:

    a.    Paying Class Counsel thirty-three percent of the money in the Escrow Account.

    b.    Paying the Claims Administrator $12,500 (which is one-half of Plaintiffs' portion of the Claim Administrator's fees as described in Section 2.1 of the Settlement Agreement).

    c.    Paying the remainder of the money in the Escrow Account to Class Members who submitted Claim Forms and Releases in accordance with the allocation plan described in Section 3.4 of the Settlement Agreement.

31.    On May 30, 2010, the Claims Administrator will distribute the money in the

Escrow Account by making the following payments:[4]

    a.    Paying Class Counsel thirty-three percent of the money in the Escrow Account.

    b.    Paying the Claims Administrator $12,500 (which is one-half of Plaintiffs' portion of the Claim Administrator's fees as described in Section 2.1 of the Settlement Agreement).

    c.    Paying the remainder of the money in the Escrow Account to Class Members who submitted Claim Forms and Releases in accordance with the allocation plan described in Section 3.4 of the Settlement Agreement.

32.    Defendants shall make all future payments on the dates specified in the Settlement

Agreement in accordance with Section 3.1(B)(8)-(21) of the Settlement Agreement.

33.    Defendant shall provide Plaintiffs with a Letter of Credit in the amount of $1.2

million on July 1, 2009 in accordance with Section 3.1(A)(6) of the Settlement Agreement;

34.    The Court retains jurisdiction over the action for the purpose of enforcing the

Injunctive Relief and the ADR Process as defined in Sections 3.6 and 3.7 of the Settlement

Agreement.

---

[4] Nothing in this Final Order and Judgment shall prohibit Class Counsel from requesting from the Court any future costs incurred in accordance with Sections 3.1(E)(2) and 3.1(F)(2) of the Settlement Agreement.

35.    The parties shall abide by all terms of the Settlement Agreement and the Court's

prior Orders with respect to the Settlement Agreement and the mediator's rulings.

36.    *This order will become final in all respects on Friday April 17, 2009 PK at which time the Clerk of the Court is directed to close this case.*

It is so ORDERED this 31h day of March , 2009.

Honorable Paul A. Crotty
United States District Judge

13